UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| VICTOR MICHAEL DAUTERIVE | CIVIL ACTION |
| VERSUS | NUMBER 6:15-cv-02182 |
| GUILBEAU MARINE LOGISTICS, LLC AND GUILBEAU MARINE, INC. | JUDGE DOHERTY |
| | MAGISTRATE HANNA |

---

<u>MEMORANDUM IN OPPOSITION TO DEFENDANT'S *DAUBERT* MOTION/MOTION IN LIMINE TO EXCLUDE/LIMIT THE EXPERT TESTIMONY/OPINIONS OF PLAINTIFF'S VOCATIONAL REHABILITATION CONSULTANT/LIFE CARE PLANNER AND ECONONOMIST</u>

Respectfully submitted:

ANDERSON, DOZIER, BLANDA & SALTZMAN

_____s/Nicholas Blanda_____
NICHOLAS A. BLANDA (#29093)
Attorney for Plaintiff
P. O. Box 82008
Lafayette, LA  70598-2008
(337) 233-3366 – phone
(337) 233-3163 – fax
Email: nicholas@andersondozier.com

<u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Authorities ............................................................. iii-iv

Exhibits .................................................................................. vi

Preface ................................................................................... 1

Background ............................................................................. 2

Daubert Standard ................................................................... 3

Law and Argument

I.    Guilbeau's motion is inappropriate and should be denied
because this matter will be tried to the bench, not to a jury,
and the procedural safeguards of *Daubert* are not implicated. ...... 5

II.   Guilbeau's Motion should be denied because challenges to the
factual basis of experts' conclusions to weight, not admissibility. ... 8

III.  Guilbeau's motion should be denied because McNabb's work-life
methodology is sound. ..................................................... 11

IV.  There are no grounds to exclude either expert's testimony due to
defects in the calculation of Dauterive's life expectancy.

V.   McNabb's Life Care Plan Is Reliable. ................................. 15

    A.   McNabb's methodology in formulating the Life Care Plan
is sound. ............................................................. 16

    B.   Guilbeau's causation argument is meritless because
Dauterive's health care providers have opined that his
injuries and future treatment are causally related to
the incident. ........................................................ 17

    C.   The methodology used to determine Dauterive's future
medical expenses is sound and the LHWCA is inapplicable. ... 19

Conclusion .......................................................................... 21

Certificate of Service ........................................................... 22

## TABLE OF AUTHORITIES

Page(s):

Federal Rules

Fed. R. Ev. 702                                                                          3-5, 10

Jurisprudence

*Basile v. Chevron,*
2012 WL 1014992 (W.D. La. 2012)                                                          9

*Berk-Cohen Associates, LLC v. Orkin Exterminating,*
2004 WL 445132 (E.D. La. 2004)                                                           9

*Blaauw v. Superior Offshore Int'l, LLC,*
2008 WL 4224808 (W.D. La. Sept. 10, 2008)                                                7

*Conner v. Brookshire Bros. Ltd.,*
No. 2:16-01148, 2018 WL 1476233 (W.D. La. Mar. 26, 2018)                                 8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469,
37 Fed. R. Evid. Serv. 1 (1993)                                          4-6, 10-11, 21-22

*Deal v. Hamilton Co. Bd. of Educ.,*
392 F.3d 840 (6th Cir. 2004)                                                             6

*Deperrodil v. Bozovic Marine, Inc.,*
842 F. 3d 352 (5th Cir. 2016)                                                   11-13, 21

*Deville v. Comar Marine Corp.,*
2009 WL 1870896 (E.D. La. June 25, 2009)                                                 6

*Doe v. Vermilion Parish Sch. Bd.,*
No. 09-1565, 2010 WL 11565600 (W.D. La., Jan. 29, 2010)                                  7

*Fruge v. Augusta Barge Co.,*
No. CIV. A. 6:08-0010, 2009 WL 742310 (W.D. La. Mar. 19, 2009)                           8

*Gibbs v. Gibbs,*
210 F. 3d 491 (5th Cir. 2000)                                                            6

*Guy v. Crown Equip. Corp.,*
394 F. 3d 320 (5th Cir. 2004)                                                            4

*Hargrave v. Blake Drilling & Workover Company, Inc.,*
2008 WL 2625524 (E.D. La. 2008)                                                          9

*In re Katrina Canal Breaches,*
No. 05-4182, 2012 WL 4328354 (E.D. La. Sept. 20, 2012)　　　　1, 6

*In re Sunpoint Securities, Inc.,*
2006 WL 6650385 (Bkrtcy. E.D.Tex. 2006)　　　　7

*Kumho Tire Co., Ltd. v. Carmichael,*
526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)　　　　4

*Latiolais v. Nautical Offshore Corp.,*
No. 6:01-1028, 2003 WL 26099935 (W.D. La. Jan. 27, 2003)　　　　7

*Mascagni v. Schlumberger Tech Corp,*
No. 16-439, 2017 WL 4127714 (W.D. La. Sept. 15, 2017)　　　　8

*McCuller v. Nautical Ventures, LLC,*
No. 05-1195, 2012 WL 12986715 (E.D. La. Jun. 6, 2012)　　　　21

*MC Louisiana Minerals, LLC v. Searcy,*
No.12-1237, 2014 WL 508517 (W.D. La. Feb. 6, 2014)　　　　8

*Moore v. Ashland Chemical, Inc.,*
151 F. 3d 269 (5th Cir. 1998)　　　　4

*Parker Drilling Offshore USA, L.L.C. v. Guderyon,*
No. 07-1142, 2008 WL 7171994 (W.D. La. Aug. 4, 2008)　　　　8

*Pipitone v. Biomatrix, Inc.,*
288 F. 3d 239 (5th Cir. 2002)　　　　5-6

*Primrose Operating Co. v. Nat'l Am. Ins. Co.,*
382 F.3d 546 (5th Cir. 2004)　　　　8

*Reed v. Ensco Offshore, Inc.,*
No. CIV.A. 04-2034, 2006 WL 5086583 (W.D. La. Feb. 2, 2006)　　　　7

*Reed v. Tokio Marine,*
2010 WL 2560487 (W.D. La. 2010)　　　　10

*Rushing v. Kansas City Southern Ry. Co.,*
185 F.3d 496, 506 (5th Cir. 1999)　　　　5

*Scott v. Ensco Offshore Co.,*
No. 6:11-1519, 2012 WL 12517805 (W.D. La. Jul. 25, 2012)　　　　8

*Sheppard v. Global Indust. Ltd.,*
No. 02-1391, 2003 WL 26113566 (W.D. La. Nov. 17, 2003)　　　　8

*SmithKline Beecham Corp. v. Apotex Corp.,*
247 F.Supp.2d 1011(N.D. Ill. 2003)　　　　6

*St. Martin v. Mobil Exploration & Producing U.S. Inc.,*
224 F.3d 402 (5th Cir. 2000)                                                    5

*Tyler v. Union Oil Co. of Cal.,*
304 F. 3d 379 (5th Cir. 2002)                                                 14

*United States v. 14.38 Acres of Land,*
80 F.3d 1074 (5th Cir. 1996)                                                   9

*United States v. Perez,*
No. 7:11-CR-170, 2012 WL 243232 (W.D. La. Jan. 25, 2012)                       8

*Utsey v. Olshan Foundation Repair Co. of New Orleans,*
2007 WL 4163664 (E.D. La. 2007)                                            9-10

*Watkins v. Telsmith, Inc.,*
121 F.3d 984 (5th Cir. 1997)                                                   4

*Whitehouse Hotel Ltd. P'ship v. Comm'r,*
615 F. 3d 321 (5th Cir. 2010)                                                  6

*Wilcox v. Max Welders, L.L.C.,*
No. 12-2389, 2013 WL 4517907 (E.D. La. Aug. 22, 2013)                      18-19

*Wilson v. American Sec. Ins. Co.,*
2008 WL 2704522, (E.D. La. 2008)                                               7

<u>EXHIBITS</u>

1.   Cites to ninety-two (92) cases within the Fifth Circuit in which *Daubert* motions were denied in cases to be tried by the bench.

2.   McNabb Affidavit.

3.   Dr. Rice report.

4.   Dr. Romero executed confirmation of McNabb Consultation Summary and Life Care Plan, 8/30/17.

5.   Dr. Weir executed confirmation of McNabb Consultation Summary and Life Care Plan, 2/8/18.

6.   Dr. Blackburn executed confirmation of McNabb Consultation Summary and Life Care Plan, 8/14/17.

7.   Dr. Romero report, 8/5/16.

8.   Dr. Weir report, 7/29/17.

9.   Dr. Leblanc report, 8/18/16.

10.  Dr. Blackburn report, 7/18/16.

MAY IT PLEASE THE COURT:

<u>PREFACE</u>

Pending before this Honorable Court is a Motion in Limine to Exclude/Limit the Expert Testimony/Opinions of Plaintiff's Vocational Rehabilitation Consultant/Life Care Planner and Economist (the "Motion") filed by Defendant, Guilbeau Marine, Inc. ("Guilbeau"). Guilbeau's Motion is based on the erroneous contention that plaintiff's vocational rehabilitation expert/life care planner, Stanford Henry McNabb ("McNabb"), and plaintiff's expert economist, Dr. Randy Rice ("Dr. Rice"), employed faulty methodology and/or relied on unreliable facts, data, and assumptions when formulating their expert opinions. The Motion lacks merit for several reasons and should be denied.

Most obviously, Guilbeau's Motion should be denied because this matter will be decided by a bench trial. *Daubert* Motions are rarely, if ever, granted in bench trials because *Daubert*'s "gatekeeper" function is designed to protect a **jury** from exposure to unreliable expert opinions. When, as here, the merits will be decided by an experienced Judge, the *Daubert* safeguards are no longer relevant. This Court is experienced and more than capable of evaluating expert testimony and assigning it the appropriate weight.  For this reason alone, Guilbeau's motion should be denied.  As Judge Duval explained in *In Re Katrina Canal Breaches*, **"*Daubert* motions for the most part, appear to be an outrageous expenditure of time, effort, and expense, in the context of a non-jury, judge-tried case such as this one."** 2010 WL 199843, at *1-2 (E.D. La. Jan. 6, 2010).

Further, Guilbeau's motion should be denied because their challenges are grounded on the facts, data, and assumptions relied upon by McNabb and Dr. Rice.  The Fifth Circuit is clear that challenges to same go to the weight and credibility of the expert's testimony, not to admissibility. Nonetheless, even if this Court were inclined to conduct a pre-trial *Daubert* analysis of McNabb and Dr. Rice, the Motion still lacks merit. McNabb and Rice

are unquestionably qualified in their respective fields. Also, the methodology employed by McNabb and Rice, as well as the data and assumptions relied on in reaching their conclusions, are sound.  As such, Guilbeau's motion should be denied.

McNabb has more than thirty years of experience as a vocational rehabilitation expert and is unquestionably familiar with the appropriate procedures. In this case, McNabb followed all best practices when calculating work-life expectancy and formulating a reliable life care plan. In addition to adhering to the guidelines of his profession, McNabb also followed procedures expressly sanctioned by the Fifth Circuit. The attacks on McNabb are without merit.

The same can be said of Dr. Rice, who is likewise qualified and experienced. In the present case, Dr. Rice applied well-accepted principles and employed appropriate methodology. There are no grounds to exclude the experts' opinions and the Motion should be denied.

<u>BACKGROUND</u>

This maritime tort litigation arises out of a March 12, 2015 incident in which a large offshore supply boat struck and/or allided with a support leg of WC-265-B, a production platform owned by EnVen located on the Outer Continental Shelf in the Gulf of Mexico. The offending vessel was the M/V Rosite G, a one hundred forty-two foot (142') supply boat owned and operated by the defendant, Guilbeau Marine.  As a result of the incident, Dauterive (Lead Operator on WC-265-B) suffered significant injuries, including:

1.  Neck injury requiring a C5-6 anterior cervical discectomy and fusion, performed on October 22, 2015.

2.  Back injury requiring an L4-5 laminectomy, medial facetectomy and non-instrumented posterior fusion and an L5-S1 anterior lumbar interbody fusion and posterior non-instrumented fusion, performed on September 28, 2017.  Plaintiff is still recovering from extensive procedure.  His earliest projected MMI date is one-year post-surgery (September 28, 2018).

3.      Post-traumatic headaches requiring prescription medication and ongoing Botox injection treatment.

4.      Left arm injury requiring a cubital tunnel release with anterior subcutaneous transposition and ulnar nerve decompression, performed July 19, 2016.

5.      Depression and anxiety requiring psychiatric treatment and prescription medication.

Plaintiff's treating physicians – Dr. Neil Romero, Dr. Robby Leblanc, Dr. David Weir, and Dr. James Blackburn, and Dr. Robby Leblanc – relate all of the plaintiff's injuries to the incident and have provided detailed recommendations regarding plaintiff's future medical needs.  Further, plaintiff's treating physicians have permanently disabled him from his prior offshore employment with Wood Group.

Plaintiff retained Stan McNabb, a certified vocational rehabilitation counselor and certified life care planner to prepare a vocational evaluation and life care plan. Furthermore, plaintiff retained Dr. Randy Rice to prepare an economic evaluation of plaintiff's claims.  As set forth below, this motion is procedurally unnecessary as this matter will be decided by the bench, not a jury.  Further, McNabb and Dr. Rice are exceptionally qualified, and their methodology is sound and reliable.  Defendant's arguments to the contrary are meritless and, at best, merely go to the weight of the evidence, not admissibility.

## *DAUBERT* STANDARD

The admissibility of expert testimony is governed by Fed. R. Evid. 702, which states: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert

has reliably applied the principles and methods to the facts of the case." Rule 702 and the principles announced in *Daubert* apply to technical or specialized expert testimony.

Generally, the proponent of scientific or technical evidence must establish the proper foundation for admissibility including the following non-exclusive factors: (1) whether the theory or technique that is the subject of the proposed testimony can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) a technique's known or potential rate of error; and (4) whether there is general acceptance of a theory or technique within the relevant scientific community. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469, 37 Fed. R. Evid. Serv. 1 (1993).

However, not all of the factors will necessarily apply to every expert's testimony. *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 990-91 (5th Cir. 1997). The test of reliability is flexible, and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Id.*

A party offering the challenged expert opinions need not prove "that the expert's testimony is correct." *Moore v. Ashland Chemical, Inc.,* 151 F. 3d 269, 276 (5th Cir. 1998). The *Daubert* analysis is not intended to judge the accuracy of the expert's conclusions. *See Guy v. Crown Equip. Corp.*, 394 F. 3d 320, 325 (5th Cir. 2004).

The law grants a district court broad latitude when it decides how to determine reliability. *Kumho*, 526 U.S. at 141–42, 119 S.Ct. at 1171. Further, the trial court is afforded vast discretion in its role as a "gatekeeper" in evaluating expert testimony and its decision to accept or reject same will not be overturned absent an abuse of discretion. *St.*

4

*Martin v. Mobil Exploration & Producing U.S. Inc.*, 224 F.3d 402, 405 (5th Cir. 2000).

**The rejection of expert testimony is the exception rather than the rule**. *See* Fed. R. Evid. 702 advisory committee notes (2000). **In *Pipitone v. Biomatrix, Inc.*, the Fifth Circuit explained that the trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system.** 288 F. 3d 239 (5th Cir. 2002). Rather, as *Daubert* makes clear, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking expert testimony. *Id.*

In this case, a detailed *Daubert* analysis is unnecessary. This is a bench trial, rendering the Court's "gatekeeper" function moot. Nevertheless, even if a complete *Daubert* analysis is applied to McNabb and Dr. Rice, their conclusions are reliable and their testimony satisfies the factors of *Daubert* and its progeny. The Motion should be denied.

<u>LAW & ARGUMENT</u>

**I.**   **<u>Guilbeau's motion is inappropriate and should be denied because this matter will be tried to the bench, not to a jury, and the procedural safeguards of *Daubert* are not implicated.</u>**

As a threshold matter, defendant's *Daubert* motion should be denied because this case will be tried to a judge, not a jury.  The objectives of *Daubert* are not implicated in cases tried to the bench.

The purpose of *Daubert* is "to ensure that only reliable and relevant expert testimony is presented to the jury." *Rushing v. Kansas City Southern Ry. Co.*, 185 F.3d 496, 506 (5th Cir. 1999) (superseded by rule on other grounds), citing *Daubert,* 509 U.S. 590-93, 113 S.Ct. 2786.  Thus, "[m]ost of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000).  Furthermore, Fifth Circuit provides that, "[T]he trial court's gatekeeper role is significantly diminished in bench trials ... because, there

being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence." *Whitehouse Hotel Ltd. P'ship v. Comm'r,* 615 F.3d 321, 330 (5th Cir.2010).  Where the gatekeeper and the factfinder are one and the same — that is, the judge — the need to make such decisions prior to hearing the testimony is lessened. *Deal v. Hamilton Co. Bd. of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004).

*Daubert* requires a binary choice - admit or exclude - and a judge in a bench trial should have discretion to admit questionable technical evidence, though of course he must not give it more weight than it deserves. *In re Katrina Canal Breaches Consolidated Litigation*, 2012 WL 4328354 (E.D. La. 2012); *SmithKline Beecham Corp. v. Apotex Corp.*, 247 F.Supp.2d 1011, 1042 (N.D. Ill. 2003).

This Court is experienced, knowledgeable, and more than capable of evaluating competing expert testimony and assigning whatever weight that it deems appropriate.  The Fifth Circuit is clear that the *Daubert* analysis should not supplant trial on the merits. *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 250 (5th Cir. 2002). When the judge is the factfinder, he need not act as a "gatekeeper" against the evidence that he may hear. *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). Thus, the objectives of *Daubert* are no longer implicated.  Rather, vigorous cross-examination and the presentation of contrary evidence are the traditional and appropriate means of attacking expert testimony. *Deville v. Comar Marine Corp.*, 2009 WL 1870896 (E.D. La. June 25, 2009).

As Judge Duval explained in *In Re Katrina Canal Breaches*, **"*Daubert* motions for the most part, appear to be an outrageous expenditure of time, effort, and expense, in the context of a non-jury, judge-tried case such as this one."** 2010 WL 199843, at *1-2 (E.D. La. Jan. 6, 2010).  Likewise, the Fifth Circuit has explained that that motions to exclude evidence have "no logical application in bench trials". 635 F.2d 517, 519 (5th Cir. 1981).  Further, a judge in a bench trial should have discretion to admit questionable

technical evidence, though of course he must not give it more weight than it deserves. *Wilson v. American Sec. Ins. Co.*, 2008 WL 2704522, \*1 (E.D. La. 2008). District courts routinely take this approach, which allows the evidence to be presented in the context of trial, where a full foundation, vigorous cross-examination, and the presentation of contrary evidence can more fully enlighten the Court with regard to the value of an expert's opinion. *In re Sunpoint Securities, Inc.*, 2006 WL 6650385 \*1 (Bkrtcy. E.D.Tex. 2006).

    For these reasons, *Daubert* motions are almost always rejected in cases where the judge will serve as the trier of fact.  For example, a Westlaw search of the terms "Daubert" and "bench trial" revealed **92 reported decisions** in which courts within the Fifth Circuit have rejected *Daubert* motion as inappropriate and unnecessary in cases that will be tried to the bench.[1]

    That is certainly the standard outcome in this district.  **For example, in *Doe v. Vermillion Parish School Bd.*, Judge Hill explained, "It is for this reason that *Daubert* objections are rarely granted in bench trials, and why the *Daubert* objection will be denied here.**" 2010 WL 11565600 (W.D. La. 2010). See also *Latiolais v. Nautical Offshore Corp.,* 2003 WL 26099935 (W.D. La. 2003)(*Daubert* motion rejected – bench trial, Judge Melancon), *Reed v. Ensco*, 2006 WL 5086583 (W.D. La. 2006)(*Daubert* motion rejected – bench trial, Judge Haik), *Blaauw v. Superior Offshore Int'l, LLC*, 2008 WL 4224808 (W.D. La. Sept. 10, 2008) (*Daubert* Motion rejected – bench trial, Judge Hill), *Fruge v. Augusta Barge Co.,* 2009 WL 742310 (W.D. La. 2009)(*Daubert* motion rejected – bench trial, Judge Melancon), *Parker Drilling v. Guderyon*, 2008 WL 7171994 (W.D. La. 2008)(*Daubert* motion rejected – bench trial, Judge Melancon); *Scott v. Ensco,* 2012 WL 12517805 (W.D. La.

---

[1] See Ex 1 for citations to all 92 cases, which are too space consuming to include in this memorandum.

2012)(*Daubert* motion rejected – bench trial, Judge Melancon); *Sheppard v. Global Industries*, 2003 WL 26113566 (W.D. La. 2003)(*Daubert* motion rejected – bench trial, Judge Melancon); *Conner v. Brookshire Brothers*, 2018 WL 1476233 (*Daubert* motion rejected – bench trial, Judge Trimble); *MC Louisiana Minerals, LLC v. Searcy,* 2014 WL 508517 (W.D. La. 2014)(*Daubert* motion rejected – bench trial, Judge Hicks), *U.S. v. Perez*, 2012 WL 243232 (W.D. La. 2012)(*Daubert* motion rejected – bench trial, Judge Kay), *Mascagni v. Schlumberger Tech Corp,* 2017 WL 4127714 (W.D. La. 2017)(*Daubert* motion rejected – bench trial, Judge James).

The above-cited cases (and many others) recognize what is self-evident:  an experienced, sophisticated jurist is not susceptible of being influenced or prejudiced by unreliable expert testimony in the same way that a lay jury may be. This suit will be decided by a bench trial. This Court is fully capable of assessing credibility, determining relevance, and assigning appropriate weight to expert testimony. As such, Guilbeau's motion should be denied.

## II.      Guilbeau's Motion should be denied because challenges to the factual basis of experts' conclusions to weight, not admissibility.

The crux of Guilbeau's arguments is that both McNabb and Dr. Rice relied on incorrect or incomplete facts in reaching their conclusions. Thus, Guilbeau argues, their opinions should be excluded altogether.  While Dauterive vigorously disputes the attacks leveled at his experts' facts and assumptions, those attacks are essentially irrelevant to this Motion. Courts within the Fifth Circuit have overwhelmingly concluded that challenges to the factual basis of an expert's opinion generally affect the weight of his testimony, not admissibility. *See, e.g., Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004); *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996).

The facts, data, and assumptions relied on by experts are "ripe for cross examination," but not grounds for exclusion. *Basile v. Chevron,* 2012 WL 1014992 (W.D.

La. 2012). There are numerous, similar cases where *Daubert* motions have been denied on the grounds that the mover's attacks on facts and assumptions were properly raised through vigorous cross-examination, rather than exclusion.

In *Berk-Cohen Associates, LLC v. Orkin Exterminating*, the defendants sought to exclude the testimony of plaintiff's economist because the factual assumptions upon which he relied were allegedly unreliable. 2004 WL 445132 (E.D. La. 2004).  *Berk-Cohen* was a breach of contract case in which the economist premised his calculations on the assumption that the contract at issue would have remained in place for 30 years. The defendants claimed the assumption was entirely speculative, unsupported by evidence and thus unreliable. However, the court rejected the defendants' arguments and held that challenges to the economist's assumptions go to the credibility of his testimony, not the admissibility. *Id.*

Further, in *Hargrave v. Blake Drilling & Workover Company, Inc.*, the defendants moved to exclude plaintiff's economist and plaintiff's claims for past/future wages and future medical expenses because the economist's calculations were based on assumptions that were allegedly not supported by the facts of the case. 2008 WL 2625524 (E.D. La. 2008).  Again, the court rejected the defendants' arguments and held that the objections to the economist's assumptions in his calculations are relevant to the credibility of his testimony, not its admissibility. *Id.*

*Utsey v. Olshan Foundation Repair Co. of New Orleans,* 2007 WL 4163664 (E.D. La. 2007) is also persuasive. In *Utsey*, like the present case, the defendants moved to exclude expert testimony based on the argument that the factual basis and assumptions of the expert opinion were fatally flawed. However, the *Utsey* court denied the defendant's motion, holding that an attack on the factual basis of an expert's opinions goes to the credibility of

9

his testimony, not admissibility. *Id.* The court referred to the Advisory Committee Note to Rule 702, which states:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other. Rule 702, Advisory Committee Notes.

The court explained that pursuant to *Daubert*, the defendants' concern about the factual basis of an expert report is best resolved by vigorous cross-examination and the presentation of contrary evidence. *Id.* That principle should be applied here.

Additionally, in *Reed v. Tokio Marine*, 2010 WL 2560487 (W.D. La. 2010), the defendant moved to exclude the testimony of plaintiff's economist because his calculations were allegedly unreliable and based on assumptions that allegedly lacked an appropriate factual basis. However, once again the court appropriately rejected the defendants' motion and explained that, pursuant to *Daubert*, the court's role as gatekeeper should not usurp the place of the fact-finder in the traditional adversary system in which vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking expert testimony. *Id.*

Considering the foregoing, Guilbeau's motion must fail. Pursuant to *Daubert* and its progeny, Guilbeau's challenges to the facts, data and assumptions utilized by McNabb and Dr. Rice go to the credibility and weight of their testimony, not admissibility. Those challenges are best raised via cross examination and presentation of contradictory evidence at trial. The Motion should be denied.

III. **Guilbeau's motion should be denied because McNabb's work-life methodology is sound.**

Dauterive maintains at all times that a *Daubert* analysis is unnecessary because this is a bench trial. Regardless, for argument's sake, Dauterive will also demonstrate that his experts' opinions are reliable and admissible. The first attack leveled by Guilbeau is

that McNabb's work-life expectancy conclusions are flawed. This position lacks merit, as McNabb's methodology was standard, appropriate, and consistent with applicable jurisprudence.

In determining Dauterive's work-life expectancy, McNabb employed methodology that was expressly sanctioned by the Fifth Circuit in *Deperrodil v. Bozovic Marine, Inc.,* 842 F. 3d 352 (5th Cir. 2016). In *Deperrodil,* the Fifth Circuit affirmed the trial court's award of future lost earnings, which was based on the plaintiff expert's calculation of work-life expectancy that deviated from Bureau of Labor Statistics ("BLS") averages.

The *Deperrodil* Court explained that courts generally use work-life expectancy averages from the BLS when evaluating future lost earnings. *Id.* at 361. However, the BLS averages are not conclusive, and evidence may show that a particular person, by virtue of health, occupation, or other factors, may work a longer or shorter period of time than average. *Id.* If evidence exists to support a deviation from BLS work-life expectancy averages, then a figure other than the average may be used as the support for a future lost earnings award. *Id.*

In *Deperrodil*, the Fifth Circuit affirmed an award of future lost wages to a work life expectancy of age **seventy five** (far above the statistical average) based upon the testimony of the plaintiff (indicating that his plan was to work to age 75) and the plaintiff's vocational rehabilitation expert who concluded that the plaintiff would likely work until age seventy five, absent injury, considering his medical history, work history, and future medical prognosis. *Id.*

*Deperrodil* is particularly relevant to the instant Motion because the Fifth Circuit analyzed the methodology employed by the *Deperrodil* expert to arrive at her conclusions about a lengthened work-life expectancy. **Notably, that methodology was virtually identical to McNabb's in the present case.** The *Deperrodil* expert interviewed the plaintiff

and reviewed his medical history, work history, earnings records, and health care providers' recommendations for future treatment. *Id.* Based on that, the expert concluded that plaintiff's work-life expectancy was slightly longer that the BLS average.

In the present case, McNabb's work-life expectancy analysis including the following steps:

1. Interviewed Dauterive about goals and expectations regarding the length of his work-life,[2]

2. Interviewed Dauterive about employment history in his family,[3]

3. Reviewed Dauterive's medical history and analyzed it in terms of its potential effect on work-life expectancy,[4]

4. Considered any applicable requirements and restrictions of Dauterive's field,[5]

5. Reviewed Dauterive's work history and earnings records,[6] and

6. Reviewed age-specific employment data of Dauterive's last employer.[7]  At the time of the incident, plaintiff had been employed by Wood Group for ten years as an offshore production operator.  Data obtained from Wood Group confirmed that an extraordinary number of their production operators working the Gulf of Mexico work well past the BLS work life statistical average.

In other words, McNabb took the same actions as the expert in *Deperrodil,* whose methodology and conclusions were upheld by the Fifth Circuit. In fact, McNabb's work-life expectancy analysis was arguably even more rigorous than that of the *Deperrodil* expert.

The Fifth Circuit found no error in accepting the conclusions of the vocational rehabilitation expert in *Deperrodil* who used the same or similar methodology as McNabb in the instant case. Accordingly, it would be clear error to exclude McNabb's work-life

---

[2] Ex. 2 – McNabb Affidavit at ¶ 13, bullet 1.
[3] Ex. 2 – McNabb Affidavit at ¶ 13, bullet 2.
[4] Ex. 2 – McNabb Affidavit at ¶ 13, bullet 3.
[5] Ex. 2 – McNabb Affidavit at ¶ 13, bullet 4.
[6] Ex. 2 – McNabb Affidavit at ¶ 13, bullet 5.
[7] Ex. 2 – McNabb Affidavit at ¶ 13, bullet 6.

expectancy opinions due to an alleged defect in his methodology. Simply put, McNabb did not use faulty methodology when calculating Dauterive's work-life expectancy; rather, he used methodology that has been sanctioned by the Fifth Circuit as recently as 2016.

Guilbeau also takes issue with the fact that certain McNabb's assumptions regarding Dauterive's work-life expectancy were based on McNabb's interview with Dauterive. However, the *Deperrodil* vocational rehab expert also relied on facts gained solely through an interview with the plaintiff. *See Deperrodil* at 361 (noting that the expert's conclusion was partially based on the plaintiff's "testimony" during an interview). This criticism of McNabb also lacks merit.

Further, Guilbeau wrongly argues that McNabb's work-life expectancy conclusions fail to take into account Dauterive's heart condition and related treatment. Guilbeau devotes more than two pages to describing Dauterive's heart treatments with Dr. Fernando Ruiz,[8] then alleges that McNabb failed to consider those medical factors when preparing the life care plan.[9] That is simply incorrect. To the contrary, McNabb considered the cardiology records from Dr. Ruiz when determining work-life expectancy.[10]

Guilbeau's lengthy discussion of Dauterive's heart condition is clearly intended to imply that that condition would reduce Dauterive's work-life expectancy. However, that conclusion is inconsistent with ample evidence from Dauterive's treating physicians.

Dr. Ruiz performed a successful heart-stent procedure that resulted in documented cardiac improvement for Dauterive.[11] Thereafter, Dauterive was cleared for back surgery. Dr. Ruiz never assigned Dauterive any work restrictions from a coronary standpoint.[12] In

---

[8] R. Doc 66-1 at 3-5.
[9] R. Doc 66-1 at 5.
[10] Ex. 2 – McNabb Affidavit at ¶¶ 17-18.
[11] Ex. 2 – McNabb Affidavit at ¶ 17.
[12] Ex. 2 – McNabb Affidavit at ¶ 17.

addition, none of Dauterive's treating physicians have provided opinions which support a reduction of Dauterive's work-life expectancy.[13]

It must also be noted that at the time of the accident, Dauterive was medically cleared to work without any restrictions, and was indeed working without any restrictions or problems.[14] Despite the prior myocardial infarction that Guilbeau makes reference to, Dauterive was cleared to return to work with Wood Group, and demonstrated through functional capacity evaluation the physical ability to work full duty in his lead operator position.[15]

Guilbeau attacks McNabb's facts, methodology, and conclusions by reference to the reports of its own experts, Dr. Elizardi and Dr. Davis.[16] Indeed, the only doctors to opine that Dauterive's heart condition would diminish his work-life expectancy are Defendants' own experts. However, conflicting expert opinions/methodologies go to weight, not admissibility. *Tyler v. Union Oil Co. of Cal.,* 304 F. 3d 379, 393 (5th Cir. 2002). The fact that Guilbeau's experts disagree with Dauterive's is hardly surprising, but it is not grounds to exclude the conclusion of McNabb or Dr. Rice. Instead, Guilbeau will be permitted to present its own expert opinions at trial.

Finally, it must again be noted that challenges to the factual basis for McNabb's conclusions regarding work-life expectancy go to weight, not admissibility. McNabb's methodology was sound and his conclusions clearly admissible in a bench trial. Guilbeau will have ample opportunity to challenge the factual support for his conclusions through vigorous cross-examination. Guilbeau's Motion should be denied.

---

[13] Ex. 2 – McNabb Affidavit at ¶ 18.
[14] Ex. 2 – McNabb Affidavit at ¶¶ 15-16.
[15] Ex. 2 – McNabb Affidavit at ¶ 16.
[16] *See, e.g.,* R. Doc. 66-1 at 3, fn. 10; *id.* at 5, fn. 19; *id.* at 9, fn. 36, fn. 39.

**IV.    There are no grounds to exclude either expert's testimony due to defects in the calculation of Dauterive's life expectancy.**

Any objections to the calculation of Dauterive's life expectancy are without merit. McNabb never calculated Dauterive's life expectancy.[17] It is undisputed that Dr. Rice relied on life expectancy tables and statistics,[18] a standard practice that is accepted in the field.

Guilbeau's Memorandum scarcely addresses this issue. The section regarding life expectancy calculations contains no reference to Dr. Rice, aside from noting that he used the "Life Table" published by the National Center for Health Statistics.[19] Further, that section contains no argument at all. Instead, it simply pastes a lengthy excerpt from McNabb's deposition. However, McNabb's testimony is clear that he never calculated Dauterive's life expectancy. Thus, this argument has no merit and there are no grounds to exclude expert testimony regarding life expectancy.

**V.    McNabb's Life Care Plan Is Reliable.**

Guilbeau advances erroneous arguments about the perceived defects in the life care plan drafted by McNabb. These should be rejected, as the life care plan was developed using sound methodology that is consistent with the field's best practices and applicable federal law. There are no grounds to exclude the life care plan or the conclusions contained therein.

**A.    McNabb's methodology in formulating the Life Care Plan is sound.**

McNabb is a nationally certified life care planner by the International Commission of Health Care Certifications.[20] He has been accepted as a vocational expert in numerous

---

[17] Ex. 2 – McNabb Affidavit at ¶ 19 (stating "I was not requested to, and I have not developed any opinion as to Mr. Dauterive's life expectancy."); s*ee also,* R. Doc. 66-1 at 13, *citing* McNabb's deposition testimony:  "I have not calculated [Dauterive's] life expectancy."
[18] *See* R. Doc. 66-1 at 12, fn. 47.
[19] R. Doc. 66-1 at 12, fn. 47.  Ex. 3 – Dr. Rice report.
[20] Ex. 2 – McNabb Affidavit at ¶ 1.

courts[21] and has never been disqualified nor excluded as an expert in life care planning.[22] His qualifications and experience are beyond reproach.

In the present case, McNabb applied his experience, knowledge, and training to formulate a life care plan in accordance with best practices and accepted standards. He met with Dauterive's treating physicians, including Drs. Romero, Weir, and Blackburn.[23] During those meetings, McNabb employed the appropriate methodology recommended by numerous written sources in the fields of Vocational Rehabilitation and Life Care Planning.[24] He used the meetings with Dauterive's treatment team to identify, evaluate, analyze, and document Dauterive's future medical treatment recommendations and their attendant costs.[25]

McNabb followed an eleven-step process in order to identify and document future medical expenses.[26] As part of that process, McNabb consulted with local sources to obtain costs of treatment, medications, supplies, and equipment.[27]

Following the meetings with Dauterive's treating physicians, McNabb sent correspondence to each to confirm the substance of the meetings and the recommendations and opinions of each doctor.[28] Drs. Blackburn, Weir, and Romero all signed these confirmatory letters.[29]

There is nothing objectionable about this methodology; indeed, it is standard methodology followed by certified life care planners. McNabb's life care planning

---

[21] Ex. 2 – McNabb Affidavit at ¶ 3
[22] Ex. 2 – McNabb Affidavit at ¶ 4.
[23] Ex. 2 – McNabb Affidavit at ¶ 10.
[24] Ex. 2 – McNabb Affidavit at ¶ 10.
[25] Ex. 2 – McNabb Affidavit at ¶ 10.
[26] Ex. 2 – McNabb Affidavit at ¶ 23.
[27] Ex. 2 – McNabb Affidavit at ¶¶ 23-24.
[28] Ex. 4 – Dr. Romero Executed Confirmation of McNabb Consultation Summary and Life Care Plan, 8/30/17; Ex. 5 – Dr. Weir Executed Confirmation of McNabb Consultation Summary and Life Care Plan, 2/8/18; Ex. 6 – Dr. Blackburn Executed Confirmation of McNabb Consultation Summary and Life Care Plan, 8/14/17.
[29] Id.

methodology is sound, and to the extent Guilbeau's Motion attacks it, the Motion lacks merit.

**B.     Guilbeau's causation argument is meritless because Dauterive's health care providers have opined that his injuries and future treatment are causally related to the incident.**

Guilbeau devotes great energy to arguing that Dauterive's treating physicians allegedly failed to opine that his future treatment needs are more probably than not causally related to the March 12, 2015 accident.[30] However, the evidence shows otherwise.

Contrary to Guilbeau's assertions, all of the medical information, data, and opinions obtained by McNabb from the therapeutic team members during his consultations were identified as directly related to the March 12, 2015 accident.[31]   Dauterive's treating physicians have all concluded that his injuries are causally related to the March 12, 2015 accident.[32]

**Further, reports from Dr. Romero and Dr. Weir explicitly state that Dauterive's medical treatment, <u>past and future</u>, is more probable than not causally related to the incident.**   Additionally, Drs. Romero, Weir and Blackburn have also certified that the future treatment contained in McNabb's Life Care Plan is accurate.[33] Thus, it is illogical and factually inaccurate to argue that there is a lack of causal connection between the accident and Dauterive's future medical treatment.

---

[30] *See, generally,* R. Doc. 66-1 at 14-18.
[31] Ex. 2 – McNabb Affidavit at ¶ 20.
[32] *See* Ex. 7 – Dr. Romero report, 8/5/16, at 2 **(opining that Dauterive's cervical and lumbar spine injuries and associated medical treatment, both past and future, are more probably than not causally related to the March 12, 2015 offshore incident)**; Ex. 8 – Dr. Weir report, 7/29/17, at 3 (opining that **Dauterive's injuries and associated medical treatment, both past and future, are more probably than not causally related to the March 12, 2015 offshore incident**); Ex 9 – Dr. Leblanc report, 8/18/16, at 1 (stating, "Mr. Dauterive's ulnar nerve issues at the left elbow and wrist are causally related to the March 12, 2015 offshore accident."); Ex 10 – Dr. Blackburn report, 7/18/16, at 17 **(stating, "Mr. Dauterive's current psychiatric condition is directly related to the injuries he sustained while working 3/12/15")**; Ex. 6, Ex. 7, Ex. 8, Dr. LeBlanc August 18, 2016 Report at 1 (stating, **"Mr. Dauterive's ulnar nerve issues at the left elbow and wrist are causally related to the March 12, 2015 offshore accident."**).
[33] See Exhibits 4, 5, 6.

All physicians McNabb consulted with to formulate the Life Care Plan (Drs. Romero, Weir, and Blackburn) provided written reports in which they concluded that Dauterive's injuries were caused by the subject incident.  Dr. Romero and Dr. Weir's reports clearly state that all medical treatment, past and future, is related to the incident.  Plaintiff's treating physicians confirmed that his injuries were more probably than not caused by the accident, and his future treatment is necessary to treat those same injuries, so the causal connection between the accident and the future treatment is axiomatic.

Yet, Guilbeau argues that somehow the future treatment is not causally related to the accident. Such a position strains all logic and should be rejected.  The *Wilcox* case cited by Guilbeau is inapposite. In *Wilcox v. Max Welders, L.L.C.*, No. 12-2389, 2013 WL 4517907 (E.D. La. Aug. 22, 2013), a life care planner's report and conclusions regarding the costs of lifetime, 24-hour care were excluded because the plaintiff's treating physician opined that 24-hour care would not be needed after a three-to-five year period. That exclusion was extremely limited, as the Motion in Limine was granted only with respect to the costs of lifetime 24-hour care (which the treating physician had expressly opined would not be necessary).

No such circumstance exists in the present case. Here, McNabb consulted with Dauterive's treating physicians regarding the frequency and duration of Dauterive's future treatment needs.[34] All of the members of Dauterive's therapeutic team certified McNabb's conclusions regarding Dauterive's injuries and treatment.[35]

Thus, unlike in *Wilcox,* this case does not involve a situation where the life care plan includes costs that a treating physician has deemed unnecessary. Rather, all of the costs in the McNabb-prepared Life Care Plan have been confirmed as necessary for future

---

[34] Ex. 2 – McNabb Affidavit at ¶¶ 20(6), 23(7).
[35] See Exhibits 4, 5, 6.  Treating physician VR and LCP confirmation packets.

treatment. *Wilcox* is easily distinguishable and provides no support for excluding McNabb's conclusions or reports in this case.

Finally, it must be reiterated that Guilbeau's complaints about the factual support for the future treatment in the life care plan, and/or the causal relationship between Dauterive's accident and his future medical treatment, **can be addressed through vigorous cross-examination at trial.** Those complaints do not, however, go to admissibility and are not grounds for exclusion of any of McNabb's conclusions or any portion of the life care plan. *See, e.g.,* numerous cases cited in § I *supra.*

### C.    The methodology used to determine Dauterive's future medical expenses is sound and the LHWCA is inapplicable.

McNabb used standard methodology when determining Dauterive's future medical expenses. As noted above, McNabb met with Dauterive's treating physicians, including Drs. Romero, Weir, and Blackburn.[36] During those meetings, McNabb employed the methodology recommended by the written sources in the fields of Vocational Rehabilitation and Life Care Planning.[37] He used the meetings with Dauterive's treatment team to identify, evaluate, analyze, and document Dauterive's future medical treatment recommendations and their attendant costs.[38]

In particular, McNabb followed an eleven-step process in order to identify and document future medical expenses.[39] As part of that process, McNabb consulted with local sources to obtain costs of treatment, medications, supplies, and equipment.[40] There is nothing objectionable about this methodology; indeed, it is the standard methodology followed by vocational rehabilitation experts/life care planners in every case. McNabb's

---

[36] Ex. 2 – McNabb Affidavit at ¶ 10.
[37] Ex. 2 – McNabb Affidavit at ¶ 10.
[38] Ex. 2 – McNabb Affidavit at ¶ 10.
[39] Ex. 2 – McNabb Affidavit at ¶ 23.
[40] Ex. 2 – McNabb Affidavit at ¶¶ 23-24.

future expenses methodology is sound, and to the extent Guilbeau's Motion attacks it, the Motion lacks merit.

In addition, the Court should reject the assertion that McNabb's future expense figures are unreliable because they do not account for potential discounts from a Longshore Harbor Workers' Compensation Act ("LHWCA") fee schedule. This is not an LHWCA case and Dauterive is not receiving LHWCA benefits.

Dauterive received LHWCA benefits for a brief time after the accident. However, those benefits were terminated shortly after the accident occurred. Since the termination of LHWCA benefits (now approximately three years and counting), all of Dauterive's medical expenses have been paid by private insurance and/or his counsel.  Guilbeau is well-aware of this fact, as Dauterive has produced itemized medical expense documentation showing the payors of his medical bills.  Just as there is no justification for discounting future medicals pursuant to the LHWCA in this case, there is likewise no support for discounting future medicals based on Dauterive's private health insurance. Health insurance is a collateral source, even in the context of future medical expenses.

The proper method for calculating a plaintiff's future medical costs is by reference to "usual and customary charges." *See McCuller v. Nautical Ventures, LLC,* No. 05-1195, 2012 WL 12986715 (E.D. La. Jun. 6, 2012). In the present case, Dauterive's future medical expenses will be paid either by Dauterive himself, and/or by private health insurance. Since private health insurance is a collateral source – even for purposes of calculating future medical expenses – Guilbeau is not entitled to receive any discount and/or windfall from Dauterive's health insurance. *McCuller, supra,* at *3. Thus, there was no reason for McNabb to discount the future medical expenses. Guilbeau's complaints on this issue should be rejected and the Motion should be denied.

CONCLUSION

This matter will be decided by a bench trial, so it is unnecessary to exclude expert testimony on reliability grounds. The normal *Daubert* gatekeeping functions do not apply. This Court is experienced and more than capable of evaluating expert testimony and assigning it appropriate weight.  In addition, all of Guilbeau's complaints about Dauterive's experts go to the weight of their testimony, not admissibility. Guilbeau is free to attack Dauterive's experts at trial with vigorous cross-examination and presentation of contrary evidence, but there are no grounds to exclude the expert testimony altogether.

Even if a *Daubert* analysis were necessary (it is not), McNabb and Dr. Rice would satisfy it. Both are unquestionably qualified, and both employed standard, reliable methodology in this case.  Considering the foregoing, Guilbeau's motion should be denied.

Contrary to Guilbeau's assertions, McNabb considered the relevant facts when determining Dauterive's work-life expectancy. McNabb used methodology sanctioned by the Fifth Circuit in *Deperrodil,* and he considered Dauterive's relevant medical history. Guilbeau's criticisms lack merit and do not support exclusion of testimony regarding work-life expectancy.

McNabb likewise used sound methodology and relied on appropriate facts when drafting the life care plan. He met with Dauterive's treating physicians and confirmed the future medical needs. Further, the treating physicians offered causation opinions that tie Dauterive's future medical treatment to the March 12, 2015 accident.

Finally, McNabb employed valid methodology in calculating future medical expenses, as he determined the usual and customary charges for the treatment that Dauterive will require. There is no need to discount future medical costs in accordance with LHWCA fee schedules because Dauterive is not receiving benefits. There is also no

21

need to discount for private insurance because that is a collateral source, even in the context of future medical expenses.

A *Daubert* Motion to Exclude is not the proper procedural vehicle for Guilbeau to attack McNabb and Dr. Rice, especially in a bench trial. Even if it were, Guilbeau's attacks lack merit because the expert's methodology and conclusions are sound. The Motion should be denied.

Respectfully submitted:

ANDERSON DOZIER BLANDA & SALTZMAN


_____s/Nick Blanda_____
NICHOLAS A. BLANDA (#29093)
Attorney for Plaintiff
P. O. Box 82008
Lafayette, LA  70598-2008
(337) 233-3366 – phone
(337) 233-3163 – fax
Email: nicholas@andersondozier.com



CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 4, 2018, a copy of the foregoing was electronically filed using the CM/ECF system.  Notice of same will be sent to all counsel of record via e-mail by operation of the court's electronic filing system.

_____s/Nicholas Blanda_____
NICHOLAS A. BLANDA