UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| VICTOR MICHAEL DAUTERIVE | CIVIL ACTION |
| VERSUS | NUMBER 6:15-cv-2182 |
| GUILBEAU MARINE LOGISTICS, LLC AND GUILBEAU MARINE, INC. | JUDGE DOHERTY |
| | MAGISTRATE HANNA |

---

<u>MEMORANDUM IN OPPOSITION TO DEFENDANT'S *DAUBERT* MOTION/MOTION IN LIMINE TO EXCLUDE/LIMIT THE TESTIMONY OF THE PLAINTIFF'S MEDICAL TEAM</u>

Respectfully submitted:

ANDERSON DOZIER BLANDA & SALTZMAN

_____s/Nicholas Blanda_____
NICHOLAS A. BLANDA (#29093)
Attorney for Plaintiff
P. O. Box 82008
Lafayette, LA  70598-2008
(337) 233-3366 – phone
(337) 233-3163 – fax
Email: nicholas@andersondozier.com

TABLE OF CONTENTS

                                                                    Page

Table of Authorities                                                  ii

Preface                                                                1

Background                                                             3

Law and Argument                                                       4

I.    Guilbeau's motion is inappropriate and should be denied because this
      matter will be tried to the bench, not to a jury, and the procedural
      safeguards of *Daubert* are not implicated.                      4

II.   Guilbeau's motion should be denied because treating physicians
      may offer expert testimony at trial without producing a written
      Rule 26 report.                                                  7

III.  Even if the court finds that Dauterive did not fully comply with
      Rule 26 regarding his treating physicians (a position that is
      vigorously denied), exclusion is inappropriate because Guilbeau has
      suffered no prejudice.                                          11

IV.   Dauterive's treating physicians are not required to have engineering
      expertise to opine about medical causation.                     15

Conclusion                                                            16

Certificate of Service                                                18

TABLE OF AUTHORITIES

Page(s):

Federal Rules

Fed. R. Civ. P. 26      1-4, 6-8, 12, 15

Jurisprudence

*Anders v. Hercules Offshore Servs., LLC,*
311 F.R.D. 161 (E.D. La. 2015)      4

*Boudreaux v. J.P. Morgan Chase & Co.,*
No. 07-555, 2007 WL 4162908 (E.D. La. Nov. 21, 2007)      4

*Butler v. Louisiana,*
No. 12-420, 2014 WL 7186120 (M.D. La. Dec. 16, 2014)      4, 6

*Conner v. Brookshire Bros. Ltd.,*
No. 2:16-01148, 2018 WL 1476233 (W.D. La. Mar. 26, 2018)      14

*Gibbs v. Gibbs,*
210 F. 3d 491 (5th Cir. 2000)      14

*Hamburger v. State Farm Mut. Auto. Ins. Co.,*
361 F. 3d 875 (5th Cir. 2004)      4, 6

*In re Katrina Canal Breaches,*
No. 05-4182, 2012 WL 4328354 (E.D. La. Sept. 20, 2012)      14

*Joe Hand Promotions, Inc. v. Chios, Inc.,*
544 Fed. Appx. 444 (5th Cir. 2013)      8

*Knorr v. Dillard's Store Servs., Inc.,*
No. 04-3208, 2005 WL 2060905 (E.D. La. Aug. 22, 2005)      4-6

*Layssard v. U.S.,*
No. 06-352, 2007 WL 4144936 (W.D. La. Nov. 20, 2007)      13, 16

*Scott v. Ensco Offshore Co.,*
No. 6:11-1519, 2012 WL 12517805 (W.D. La. Jul. 25, 2012)      14

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.,*
73 F. 3d 546 (5th Cir. 1996)      11

*Tolliver v. U-Haul Co. of Texas,*
No. 2:09-CV-313, 2011 WL 3626328 (W.D. La. Aug. 17, 2011)          7

*U.S. v. Cooks,*
589 F. 3d 173 (5th Cir. 2009)          14

*Whitehouse Hotel Ltd. P'ship v. Comm'r,*
615 F. 3d 321 (5th Cir.2010)          14

<u>MEMORANDUM IN OPPOSITION TO GUILBEAU</u>
<u>MARINE, INC.'s *DAUBERT* MOTION/MOTION IN LIMINE</u>

MAY IT PLEASE THE COURT:

<u>PREFACE</u>

Pending before this Honorable Court is a Motion in Limine to Exclude/Limit The Testimony/Opinions of The Plaintiff's Medical Team (the "Motion") filed by Defendant, Guilbeau Marine, Inc. ("Guilbeau"). The Motion wrongly argues that the treating physicians of Plaintiff, Victor Michael Dauterive ("Dauterive"), should be excluded from offering expert testimony regarding certain topics, such as causation, functional/work restrictions, and future medicals.

Guilbeau seeks unprecedented relief in this *"Daubert"* motion and argues that the plaintiff's highly pedigreed, experienced team of treating physicians (Dr. Neil Romero, Dr. David Weir, Dr. Robby Leblanc, Dr. James Blackburn) should be <u>excluded from testifying at trial</u> because their summation reports, medical records, and signed vocational rehabilitation/life care plan certification don't perfectly comply with Rule 26.  As Judge Duval explained in *In Re Katrina Canal Breaches*, **"*Daubert* motions for the most part, appear to be an outrageous expenditure of time, effort, and expense, in the context of a non-jury, judge-tried case such as this one."** 2010 WL 199843, at *1-2 (E.D. La. Jan. 6, 2010).

Guilbeau's motion is fatally flawed and relies up on the incorrect assumption that treating physicians are governed by the same Rule 26 disclosure and reporting requirements as experts retained solely for trial purposes. However, Rule 26's requirements do not apply to treating physicians, as treating physicians may offer expert opinion testimony at trial without providing a written, Rule 26 report. The Motion lacks merit on this fundamental point and should be denied.

1

Regardless, the Motion should still be denied because Dauterive timely produced reports from all treating physicians that addressed their conclusions regarding medical causation, functional/work restrictions, and future medicals. In addition, the treating physician reports make clear that each doctor provided active, ongoing medical treatment to Dauterive. The doctors' opinions about Dauterive were developed directly through their personal knowledge gained while treating the patient.

The physicians' opinions regarding future medical care were also relayed to Dauterive's vocational rehabilitation expert/life care planner, Stanford McNabb ("McNabb"). McNabb included the details of future medical treatment in his life care plan, and each of the relevant treating physicians certified that these future medical recommendations were correct.

Further, the policies underlying Rule 26 dictate that the Motion be denied. With respect to expert witnesses, the primary purposes of Rule 26 are:  1) to allow the opposing party sufficient information to prepare an adequate cross-examination, and 2) to prevent surprise or prejudice. Guilbeau is in no danger of suffering either surprise or prejudice, as Dauterive has produced all of his medical records, treating physician reports, and life care plan. Those documents contain detailed information about the doctors' treatment of Dauterive, the information those doctors gained during treatment, and the conclusions developed from that information. Guilbeau will not be surprised by anything at trial and has more than ample documentation and information to prepare an effective cross-examination of Dauterive's treating physicians.

Finally, while Guilbeau's Motion contains no direct discussion of *Daubert* and its progeny, it is styled as *Daubert* and Guilbeau is asking the Court to employ a "gatekeeping" function with respect to certain experts.  In this regard, Guilbeau's motion should be denied because this will be tried to the bench, not a jury, and the procedural safeguards

of *Daubert* and not implicated. When, as here, the merits will be decided by an experienced, knowledgeable judge, the *Daubert* safeguards are no longer relevant. This Court is uniquely qualified and more than capable of evaluating expert testimony and assigning it the appropriate weight. Considering the foregoing, Guilbeau's motion must be denied.

<u>BACKGROUND</u>

This maritime tort litigation arises out of a March 12, 2015 incident in which a large offshore supply boat struck and/or allided with a support leg of WC-265-B, a production platform owned by EnVen located on the Outer Continental Shelf in the Gulf of Mexico. The offending vessel was the M/V Rosite G, a one hundred forty-two foot (142') supply boat owned and operated by the defendant, Guilbeau Marine. As a result of the incident, Dauterive (Lead Operator on WC-265-B) suffered significant injuries, including:

1.  Neck injury requiring a C5-6 anterior cervical discectomy and fusion, performed on October 22, 2015.

2.  Back injury requiring an L4-5 laminectomy, medial facetectomy and non-instrumented posterior fusion and an L5-S1 anterior lumbar interbody fusion and posterior non-instrumented fusion, performed on September 28, 2017. Plaintiff is still recovering from this extensive procedure. His earliest projected MMI date is one-year post-surgery (September 28, 2018).

3.  Post-traumatic headaches requiring prescription medication and ongoing Botox injection treatment.

4.  Left arm injury requiring a cubital tunnel release with anterior subcutaneous transposition and ulnar nerve decompression, performed July 19, 2016.

5.  Depression and anxiety requiring psychiatric treatment and prescription medication.

Plaintiff timely produced reports from all treating physicians – Dr. Neil Romero, Dr. Robby Leblanc, Dr. David Weir, and Dr. James Blackburn, and Dr. Robby Leblanc – in which all opine that his injuries were caused by the incident and that he is permanently disabled from his job as a lead production operator. Further, plaintiff has timely produced

3

life care plan documentation which sets forth the treating physician's detailed recommendations regarding Dauterive's future medical needs.

LAW & ARGUMENT

**I.**     **<u>Guilbeau's motion is inappropriate and should be denied because this matter will be tried to the bench, not to a jury, and the procedural safeguards of <u>*Daubert*</u> are not implicated.</u>**

As a threshold matter, defendant's *Daubert* motion should be denied because this case will be tried to a judge, not a jury. The objectives of *Daubert* are not implicated in cases tried to the bench.

The purpose of *Daubert* is "to ensure that only reliable and relevant expert testimony is presented to the jury." *Rushing v. Kansas City Southern Ry. Co.*, 185 F.3d 496, 506 (5th Cir. 1999) (superseded by rule on other grounds), citing *Daubert,* 509 U.S. 590-93, 113 S.Ct. 2786. Thus, "[m]ost of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). Furthermore, Fifth Circuit provides that, "[T]he trial court's gatekeeper role is significantly diminished in bench trials ... because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence." *Whitehouse Hotel Ltd. P'ship v. Comm'r,* 615 F.3d 321, 330 (5th Cir.2010). Where the gatekeeper and the factfinder are one and the same — that is, the judge — the need to make such decisions prior to hearing the testimony is lessened. *Deal v. Hamilton Co. Bd. of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004).

*Daubert* requires a binary choice – admit or exclude – and a judge in a bench trial should have discretion to admit questionable technical evidence, though of course he must not give it more weight than it deserves. *In re Katrina Canal Breaches Consolidated Litigation*, 2012 WL 4328354 (E.D. La. 2012); *SmithKline Beecham Corp. v. Apotex Corp.*, 247 F.Supp.2d 1011, 1042 (N.D. Ill. 2003).

4

This Court is experienced, knowledgeable, and more than capable of evaluating competing expert testimony and assigning whatever weight that it deems appropriate.  The Fifth Circuit is clear that the *Daubert* analysis should not supplant trial on the merits. *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 250 (5th Cir. 2002). When the judge is the factfinder, he need not act as a "gatekeeper" against the evidence that he may hear. *Gibbs v. Gibbs,* 210 F.3d 491, 500 (5th Cir. 2000). Thus, the objectives of *Daubert* are no longer implicated.  Rather, vigorous cross-examination and the presentation of contrary evidence are the traditional and appropriate means of attacking expert testimony. *Deville v. Comar Marine Corp.,* 2009 WL 1870896 (E.D. La. June 25, 2009).

As Judge Duval explained in *In Re Katrina Canal Breaches,* **"*Daubert* motions for the most part, appear to be an outrageous expenditure of time, effort, and expense, in the context of a non-jury, judge-tried case such as this one."** 2010 WL 199843, at *1-2 (E.D. La. Jan. 6, 2010).  Likewise, the Fifth Circuit has explained that that motions to exclude evidence have "no logical application in bench trials". 635 F.2d 517, 519 (5th Cir. 1981).  Further, a judge in a bench trial should have discretion to admit questionable technical evidence, though of course he must not give it more weight than it deserves. *Wilson v. American Sec. Ins. Co.,* 2008 WL 2704522, *1 (E.D. La. 2008). District courts routinely take this approach, which allows the evidence to be presented in the context of trial, where a full foundation, vigorous cross-examination, and the presentation of contrary evidence can more fully enlighten the Court with regard to the value of an expert's opinion. *In re Sunpoint Securities, Inc.,* 2006 WL 6650385 *1 (Bkrtcy. E.D.Tex. 2006).

For these reasons, *Daubert* motions are almost always rejected in cases where the judge will serve as the trier of fact.  For example, a Westlaw search of the terms "Daubert" and "bench trial" revealed **<u>92 reported decisions</u>** in which courts within the Fifth Circuit

5

have rejected *Daubert* motion as inappropriate and unnecessary in cases that will be tried to the bench.[1]

That is certainly the standard outcome in this district. **For example, in *Doe v. Vermillion Parish School Bd.,* Judge Hill explained, "It is for this reason that *Daubert* objections are rarely granted in bench trials, and why the *Daubert* objection will be denied here."** 2010 WL 11565600 (W.D. La. 2010). See also *Latiolais v. Nautical Offshore Corp.,* 2003 WL 26099935 (W.D. La. 2003)(*Daubert* motion rejected – bench trial, Judge Melancon), *Reed v. Ensco*, 2006 WL 5086583 (W.D. La. 2006)*(Daubert* motion rejected – bench trial, Judge Haik), *Blaaw v. Superior Offshore*, 2008 WL 4224808 (*Daubert* Motion rejected – bench trial, Judge Hill), *Fruge v. Augusta Barge Co.,* 2009 WL 742310 (W.D. La. 2009)(*Daubert* motion rejected – bench trial, Judge Melancon), *Parker Drilling v. Guderyon*, 2008 WL 7171994 (W.D. La. 2008)(*Daubert* motion rejected – bench trial, Judge Melancon); *Scott v. Ensco,* 2012 WL 12517805 (W.D. La. 2012)(*Daubert* motion rejected – bench trial, Judge Melancon); *Sheppard v. Global Industries*, 2003 WL 26113566 (W.D. La. 2003)(*Daubert* motion rejected – bench trial, Judge Melancon); *Connor v. Brookshire Brothers*, 2018 WL 1476233 (*Daubert* motion rejected – bench trial, Judge Trimble); *MC Louisiana Minerals, LLC v. Searcy,* 2014 WL 508517 (W.D. La. 2014)(*Daubert* motion rejected – bench trial, Judge Hicks), *U.S. v. Perez*, 2012 WL 243232 (W.D. La. 2012)(*Daubert* motion rejected – bench trial, Judge Kay), *Mascagni v. Schlumberger Tech Corp,* 2017 WL 4127714 (W.D. La. 2017)(*Daubert* motion rejected – bench trial, Judge James).

---

[1] See Ex 1 for citations to all 92 cases, which are too space consuming to include in this memorandum.

The above-cited cases (and many others) recognize what is self-evident:  an experienced, sophisticated jurist is not susceptible of being influenced or prejudiced by unreliable expert testimony in the same way that a lay jury may be. This suit will be decided by a bench trial. This Court is fully capable of assessing credibility, determining relevance, and assigning appropriate weight to expert testimony. As such, Guilbeau's motion should be denied.

**II.**     **Guilbeau's motion should be denied because treating physicians may offer expert testimony at trial without producing a written Rule 26 report.**

Guilbeau's argument for exclusion must fail because it is based on the mistaken premise that treating physicians are required to produce formal, Rule 26 reports in the same manner as experts hired solely for litigation purposes. That position is incorrect and the Motion should be denied.

Although Guilbeau's supporting memorandum contains nearly twenty pages of discussion, its argument is simple:  Dauterive's treating physicians did not provide written reports that contain all information listed in Fed. R. Civ. P. 26(a)(2), and thus the physicians' testimony regarding causation, functional/work restrictions, and future medical treatment should be excluded. Such an argument is inconsistent with Rule 26 and applicable jurisprudence.

The advisory committee comments (1993 amendment) to Fed. R. Civ. Proc. 26 could not be clearer: "A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report." The inquiry should end there. Dr. Romero, Dr. Weir, Dr. Leblanc, and Dr. Blackburn are Dauterive's "treating physicians" under any reasonable definition of that phrase, and thus they may testify without a requirement of a written report. That alone is sufficient grounds to deny Guilbeau's Motion in its entirety.

The rule that treating physicians may offer opinion testimony without a Rule 26 report is straightforward and commonly applied by Federal Courts in this circuit. *See, e.g.,*

*Hamburger v. State Farm Mut. Auto. Ins. Co.,* 361 F. 3d 875, 882 (5th Cir. 2004) (citing favorably the 1993 advisory committee comment to Rule 26); *Butler v. Louisiana,* No. 12-420, 2014 WL 7186120, at *2 (M.D. La. Dec. 16, 2014) (stating, "[t]reating physicians are not required to submit an expert report under Rule 26"); *Anders v. Hercules Offshore Servs., LLC,* 311 F.R.D. 161, 162 (E.D. La. 2015); *Boudreaux v. J.P. Morgan Chase & Co.,* No. 07-555, 2007 WL 4162908, at *2 (E.D. La. Nov. 21, 2007); *Knorr v. Dillard's Store Servs., Inc.,* No. 04-3208, 2005 WL 2060905, at *3 (E.D. La. Aug. 22, 2005).

The *Knorr* case was virtually identical to this one. There, the Plaintiff provided defendants with all medical records from his treating physicians, just as Dauterive has done here. The Defendants in *Knorr* asked for exclusion of the expert physician testimony on the grounds that the records and reports produced did not comply with Rule 26.

The Court denied the Motion, explaining: "A treating physician may testify to his opinions about a plaintiff's injuries if his testimony is based on knowledge acquired during the course of his treatment of the plaintiff . . . **A written report is therefore not required for a treating physician whose testimony and opinions derive from information learned during actual treatment of the patient**, rather than from subsequent evaluation as a specially retained expert." *Knorr* at *3 (emphasis added).

It cannot be disputed that all four doctors discussed in Guilbeau's Motion developed their opinions based on knowledge acquired **during actual treatment of Dauterive.** These were not doctors hired to review medical records without examining the patient, nor were they hired to perform an exam solely to acquire opinions for litigation. Rather, each of these doctors examined and treated Dauterive on numerous occasions. Such is apparent from the treatment records of Dr. Romero, Dr. Weir, Dr. Leblanc, and Dr. Blackburn – all of which have been produced to Guilbeau.

Indeed, Guilbeau's own memorandum admits that these doctors provided extensive medical **treatment** to Dauterive.[2] In sum, these four doctors provided direct medical treatment to Dauterive for more than three years. In light of that, it would be absurd to classify them as anything but "treating physicians." They are therefore permitted to testify regarding their expert medical opinions – including matters related to medical causation, functional/work restrictions, and future treatment – regardless of the substance of any written reports produced to Guilbeau. The Motion should be denied.

Guilbeau advances the spurious argument that because Dauterive's attorneys helped coordinate his first appointment with certain doctors, then that fact alone disqualifies the doctors from being classified as "treating physicians" who are exempt from Rule 26 report requirements.[3] Such an argument is inconsistent with Rule 26, unsupported by plain English, and has not been adopted by the Fifth Circuit Court of Appeals.

When determining whether a medical professional may be permitted to testify without submission of a Rule 26 report, the relevant inquiry is whether that doctor is a "treating physician." *See* Fed. R. Civ. P. 26, advisory committee note (1993 amendment); *Hamburger, supra; Butler, supra; Knorr, supra.* There is nothing in Rule 26 or its comments that discusses, references, addresses, or refers to the circumstances of the patient's referral to that physician. Rule 26, and most of the jurisprudence applying it, makes no distinction between family referrals, other physician referrals, attorney referrals, insurance referrals, etc. The only relevant question is whether the doctor is a "treating" physician.

---

[2] R. Doc. 63-1 at 9-10 (acknowledging that Dr. LeBlanc performed surgery on Dauterive after the accident, Dr. Romero performed two surgical procedures on Dauterive after the accident, and Dr. Weir examined Dauterive on multiple occasions and performed diagnostic testing).
[3] *See, e.g.,* R. Doc. 63-1 at 12.

In a medical context, "treat" can be defined as "to deal with (a disease, patient, etc.) in order to relieve or cure."[4] In other words, the definition of "treat" or "treating" centers on the actions of the physician; **it does not matter how the doctor-patient relationship originated.** The relevant question is, "Did the doctor take actions intended to relieve or cure the patient?" Here, all four doctors addressed by Guilbeau's Motion unquestionably did, and did so over an extended period of time. Thus, they would be treating physicians whether Dauterive met them through his attorney, his mother, a co-worker, another physician, or simply picked their names out of a phone book.

Guilbeau relies heavily on *Tolliver v. U-Haul Co. of Texas,* No. 2:09-CV-313, 2011 WL 3626328 (W.D. La. Aug. 17, 2011) to support its position that an attorney referral to a physician automatically triggers a Rule 26 report requirement. However, *Tolliver* is an outlier among Rule 26 jurisprudence and is distinguishable from the present case.

The *Tolliver* matter involved specific Scheduling Order language that expressly required written reports from all physicians, and the Court stated that that was the most important reason it excluded physician testimony based on a failure to produce a written report. *Tolliver* at *3. In addition, the *Tolliver* Plaintiff failed to disclose even the identity of expert physicians prior to the applicable deadline in the Scheduling Order, a circumstance that is not present here. *Id.* at 2.

Further, with all due respect to the conclusions of the Court in *Tolliver* (which is not binding precedent), requiring Rule 26 reports from all physicians who first saw a patient through attorney referral is simply inconsistent with Rule 26 and the definition of "treating," for the reasons discussed *supra.*  Finally, contrary to *Tolliver,* in the present case plaintiff timely provided reports from the treating physicians addressing all pertinent issues (causation, functional/work restrictions, future medical).

---

[4] http://www.dictionary.com/browse/treat?s=t (retrived June 1, 2018).

It is undisputed that Dr. Romero, Dr. Weir, Dr. Leblanc, and Dr. Blackburn treated Dauterive extensively. Accordingly, they are "treating physicians" and thus exempt from Rule 26 report requirements. The Motion should be denied.

**III.**      **<u>Even if the court finds that Dauterive did not fully comply with Rule 26 regarding his treating physicians (a position that is vigorously denied), exclusion is inappropriate because Guilbeau has suffered no prejudice.</u>**

Even if Dauterive's treating physicians were required to produce Rule 26 expert reports (they don't) and the summation reports, medical records, and signed vocational rehabilitation and life care plan certifications were defective in some way (they are not), it would be inappropriate to exclude plaintiff's treating physicians on a technicality that resulted in no prejudice to the defense. Dauterive has provided Guilbeau with all medical records from the relevant treating physicians, as well as additional reports and a life care plan that elaborate on their opinions about Dauterive's injuries, conditions, causation, restrictions, and future care. Thus, Guilbeau is in possession of the documents and information necessary to fulfill the objectives of Rule 26. Exclusion is unwarranted.

"The basic purpose of Rule 26 is to prevent prejudice and surprise." *Joe Hand Promotions, Inc. v. Chios, Inc.,* 544 Fed. Appx. 444, 446 (5th Cir. 2013) (internal citations omitted). Guilbeau itself acknowledges that a fundamental policy behind Rule 26 "is for the other side, in advance of trial, to have a reasonable opportunity to prepare for effective cross examination."[5] Here, each of those objectives have already been achieved through Dauterive's disclosures and document productions.

Guilbeau is in possession of all of Dr. Romero's treatment records, which contain descriptions of Dr. Romero's treatment, impressions, testing, procedures, and communications with Dauterive. Additionally, Guilbeau is in possession of Dr. Romero's August 5, 2016 narrative/summation report which contains a detailed discussion of, *inter*

---

[5] R. Doc. 63-1 at 16.

*alia,* the medical treatment provided by Dr. Romero to Dauterive, the history of the incident, the diagnoses for Dauterive's injuries, and Dr. Romero's opinions regarding medical causation, work/functional limitations, and future treatment.[6]

Guilbeau is likewise in possession of all treatment notes/records from Dr. Weir, which also contain similar treatment details. Further, Dauterive has produced Dr. Weir's July 29, 2017 narrative/summation report, which contains a detailed discussion of, *inter alia,* the diagnostic testing performed by Dr. Weir, the medications he prescribed, medical treatment provided by Dr. Weir, the diagnoses for Dauterive's injuries, and Dr. Weir's opinions regarding medical causation, work/functional limitations, and disability.[7]

Similarly, Guilbeau is in possession of the same such records from Dr. LeBlanc. Dauterive has produced all of Dr. LeBlanc's treatment notes/records which describe Dr. LeBlanc's treatment, impressions, testing, procedures, and communications with Dauterive. Dauterive has also produced Dr. LeBlanc's August 18, 2016 report.[8] That document contains a detailed discussion of, *inter alia,* Dr. LeBlanc's prior treatment of Dauterive, Dr. LeBlanc's post-accident diagnosis and treatment (including surgery), his opinions regarding medical causation, opinions regarding the length of future symptoms, and the facts supporting his conclusions.[9]

Likewise, Dr. Blackburn's reports contain discussions of, inter alia, medical records he reviewed, treatment sessions he conducted with Dauterive, his impressions, Dauterive's

---

[6] Ex. 2 – Dr. Romero August 5, 2016 report.  Note that Dr. Romero analyzed plaintiff's Wood Group job description before rendering the opinion that plaintiff was permanently disabled from his prior employment as a result of his accident related injuries.  Further, the history of the traumatic incident was detailed in Dr. Romero's narrative/summation report.

[7] Ex. 3 – Dr. Weir July 29, 2017 report. Note that Dr. Weir analyzed plaintiff's Wood Group job description before rendering the opinion that plaintiff was permanently disabled from his prior employment as a result of his accident related injuries.  Further, the history of the traumatic incident was included in the causation report.

[8] Ex. 4 – Dr. LeBlanc August 18, 2016 report.  Like the other treating physicians, Dr. Leblanc's causation report contains a history the traumatic incident and discussion of Dauterive's pre-accident medical treatment.

[9] Ex. 4 – Dr. LeBlanc August 18, 2016 report.

symptoms, a description of the incident, causation opinions, and medication prescribed.[10] All relevant information and conclusions related to Dr. Blackburn are already in Guilbeau's possession. Accordingly, Guilbeau can reasonably prepare for his cross examination and will not be surprised by his testimony.

Finally, Dauterive timely produced his vocational rehabilitation and life care plan documents to the defendants. The voc rehab documents contain Work Status Reports, in which the treating physicians opined (again) on the plaintiff's current and probable long term work restrictions.[11]

The life care plan contains additional, detailed documentation regarding all opinions about Dauterive's future medical care. To prepare the life care plan, Dauterive's vocational rehabilitation expert/life care planner, Stanford McNabb ("McNabb"), met with Dauterive's treating physicians, including Drs. Romero, Weir, and Blackburn. During those meetings, Drs. Romero, Weir, and Blackburn shared with McNabb their future medical treatment opinions, recommendations, and the attendant costs. McNabb then memorialized those recommendations and costs in the life care plan.

Following the meetings with Dauterive's treating physicians, McNabb sent correspondence to each physician to confirm the substance of the meetings and the future medical recommendations and opinions.[12] Drs. Blackburn, Weir, and Romero all signed these confirmatory letters[13] (which have been produced to Guilbeau). Thus, Guilbeau is in possession of detailed documentation regarding Dauterive's future medical needs.[14]

---

[10] Ex 5 – Dr. Blackburn report, July 18, 2016.
[11] Ex 6, 7, 8 – McNabb vocational rehabilitation/life care plan packets.
[12] Ex. 6 – Dr. Romero 8/30/17 Executed Confirmation of McNabb Consultation Summary and Life Care Plan; Ex. 7 – Dr. Weir 2/8/18 Executed Confirmation of McNabb Consultation Summary and Life Care Plan; Ex. 8 – Dr. Blackburn 8/14/17 Executed Confirmation of McNabb Consultation Summary and Life Care Plan.
[13] Id.
[14] As detailed in plaintiff's motion to continue trial, at the time plaintiff's life care plan was prepared, Dr. Romero was recommending a single level lumbar fusion. Further, his opinions regarding long-term future care and/or pain management were deferred/unknown, pending MMI. Ultimately, Dr. Romero elected to perform to two-level back surgery. MMI is projected in January, 2019.

It is undisputed that **Guilbeau has every single page of every document drafted by these four doctors in connection with their treatment of Dauterive,** as well as additional documentation specifically noting the treating physicians' opinions regarding causation, work restrictions, and future medicals. Thus, there is no danger that Guilbeau could suffer any surprise or prejudice at trial. There are no grounds for exclusion of the physicians' expert testimony.

The Fifth Circuit uses a four-part test to determine whether exclusion is an appropriate sanction for a Rule 26 violation. Courts are instructed to consider: "(1) the importance of the witnesses' testimony; (2) the prejudice to the opposing party of allowing the witnesses to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to comply with the discovery order." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.,* 73 F. 3d 546, 572 (5th Cir. 1996). In this case, all of these factors weigh strongly in Dauterive's favor and dictate that the Motion be denied, or else are inapplicable.

First, the importance of the opinion testimony of Dauterive's treating physicians needs no discussion. Such testimony is central to the case and Dauterive would suffer great prejudice if it were excluded. That factor weighs strongly against exclusion.

Second, as discussed in great detail *supra,* Guilbeau will suffer no prejudice if Dauterive's treating physicians are allowed to testify without restriction.

The next factor is inapplicable. Since Guilbeau would not suffer any prejudice if the physicians are allowed to testify, then no continuance is needed to cure the (non-existent) prejudice.

Finally, the fourth factor should also be inapplicable, as Dauterive has not failed to comply with any Orders or Rules. Nonetheless, even if the Court felt that Dauterive was

not fully in compliance, Dauterive acted in good faith at all times. He produced all medical records to Guilbeau and produced additional reports containing his experts' opinions. Any failure to produce more detailed "Rule 26 reports" was based on a good-faith belief that such reports were not required for treating physicians, pursuant to the Rule 26 comments and relevant jurisprudence.

**IV.    Dauterive's treating physicians are not required to have engineering expertise to opine about medical causation.**

Incredibly, Guilbeau seeks to exclude the testimony physicians' testimony regarding medical causation because they allegedly have no expertise in biomechanics or engineering.[15]    Guilbeau provides no legal support for its absurd argument and their position has been directly rejected by in this district.  Clearly, Dr. Romero (a board certified, fellowship trained spine surgeon), Dr. David Weir (a board certified neurologist), Dr. Robby Leblanc (a board certified, fellowship trained neurologist) have extensive expertise, education, training, and experience treating injuries caused by trauma such as auto accident, offshore accidents, falls, and/or sports injuries.  The mechanics and anatomy of the human body and how it reacts to trauma is inherent in their profession.

Guilbeau's argument that plaintiffs' treating physicians should be excluded from testifying regarding medical causation because they are not biomechanical engineers is easily rejected for the reasons eloquently stated by Judge Drell in *Layssard v. U.S.,* No. 06-352, 2007 WL 4144936 (W.D. La. Nov. 20, 2007).  In *Layssard,* this exact issue came before the court in the context of a *Daubert* motion to exclude the defendant's biomechanical expert from testifying regarding medical causation.

In *Layssard,* the defense advanced the same argument that Guilbeau sets forth in the present case, namely that the physician's medical causation opinions were flawed due

---

[15] R. Doc. 63-1 at 20.

to the physicians' lack of engineering knowledge. The Court rejected such a position, explaining:

> In essence, Dr. Baratta says that he is not a medical doctor and cannot offer an opinion as to medical causation, but he refuses to defer to the opinion of a medical doctor because the medical doctor presumably does not have his own engineering knowledge. In this situation, *no one* could offer an opinion as to medical causation, for it creates a classic chicken-or-egg problem: the bio-mechanical engineer could not offer medical opinions because he is not a doctor, but the doctor could not offer medical opinions because he has no bio-mechanical engineering knowledge. **This is a severely flawed assumption. Put simply, medical doctors are qualified – indeed, uniquely qualified – to offer opinions as to medical causation; bio-mechanical engineers are not.**

*Id.* at *3 (emphasis added).

Ultimately, Judge Drell excluded the defendant's biomechanist, Richard Baratta, PhD, from testifying regarding medical causation.  Interestingly, Baratta is the defense biomechanist in this case and Guilbeau is presenting the same unfounded argument.

Clearly, a physician is not required to have any engineering background in order to offer a medical causation opinion. All four of Dauterive's treating physicians are unquestionably qualified and experienced in their respective medical fields, and thus all four should be permitted to offer medical causation opinions at trial.

CONCLUSION

Guilbeau's *Daubert* motion is completely unnecessary because this case will be decided by a bench trial. This Court is more than qualified to conduct its own assessment of expert testimony and give it appropriate weight.

Dr. Romero, Dr. Weir, Dr. Leblanc, and Dr. Blackburn are all highly pedigreed, experienced "treating physicians" under any reasonable definition of that phrase. Thus, pursuant to applicable case law and the Rule 26 advisory committee notes, they may

provide opinion testimony at trial without first providing any written report. The fundamental premise of Guilbeau's Motion is flawed.

Even so, Dauterive has provided Guilbeau with extensive documentation and information to satisfy the requirements and objectives of Rule 26, including narrative/summation reports, Work Status reports, and signed Life Care Plan certifications setting forth the treating physicians' opinions regarding the pertinent issues in this case such as medical causation, functional/work restrictions, and projected future medical treatment.   That rule exists to avoid surprise or prejudice at trial by ensuring that the opposing party has all relevant information to prepare for cross-examination.

Here, that has been accomplished. Dauterive produced all medical records and reports of his treating physicians. Guilbeau knows the relevant details regarding Dauterive's diagnoses, treatment, and medication, as well as all physicians' opinions regarding causation, functional/work restrictions, and future medical needs. The details of all future medical care are included in Dauterive's life care plan, and all treating physicians certified that their recommendations regarding future treatment contained therein were correct.

Further, there are no grounds for excluding medical causation testimony based on the physicians' lack of engineering expertise. As noted in *Layssard, supra,* medical doctors (as opposed to biomechanical experts) are uniquely qualified to offer medical causation opinions.   Guilbeau's motion lacks merit and should be denied.

Respectfully submitted:

ANDERSON DOZIER BLANDA & SALTZMAN

_____s/Nick Blanda_____
NICHOLAS A. BLANDA (#29093)
Attorney for Plaintiff
P. O. Box 82008
Lafayette, LA  70598-2008
(337) 233-3366 – phone
(337) 233-3163 – fax
Email: nicholas@andersondozier.com

CERTIFICATE OF SERVICE

 I HEREBY CERTIFY that on June 4, 2018 a copy of the foregoing was electronically filed using the CM/ECF system.  Notice of same will be sent to all counsel of record via e-mail by operation of the court's electronic filing system.

 _____s/Nicholas Blanda_____
 NICHOLAS A. BLANDA

18