UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| VICTOR MICHAEL DAUTERIVE | CIVIL ACTION NO. 15-cv-2182 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| GUILBEAU MARINE LOGISTICS L L C ET AL | BY CONSENT OF THE PARTIES |

## **MEMORANDUM ORDER**

Before the Court is the Motion to Exclude or Limit the Testimony and/or Opinions of "Plaintiff's Medical Team," consisting of Drs. Leblanc, Weir, Romero, & Blackburn (Rec. Doc. 63), filed by Defendant Guilbeau Marine, Inc. The Plaintiff filed an opposition (Rec. Doc. 83), to which the Defendant replied (Rec. Doc. 87). Oral argument was held on June 28, 2018.

In the instant motion, the Defendant argues that each of these experts–Drs. Leblanc, Weir, Romero, and Blackburn–was retained by the Plaintiff specifically for litigation such that each expert was required to, but did not, comply with the timing and disclosure requirements of Rule 26(a)(2)(B). Defendant urges the Court to limit the testimony of these medical experts to their treatment, and related records, of the Plaintiff. Specifically, the Defendant asks that these experts be excluded from providing any testimony as to medical causation, work and functional limitations, and future treatment of the Plaintiff's injuries. The Plaintiff responds that these experts are exempt from Rule 26(a)(2)(B) as treating physicians; that the Defendant

is in possession of all medical records and reports of these treating physicians; and that these physicians are uniquely qualified to offer opinions as to medical causation of the Plaintiff's injuries. The Plaintiff emphasizes that each of these opinions is based on "knowledge acquired during actual treatment of [the Plaintiff]."[1]

Rule 26(a)(2)(B) requires that an expert witness "disclosure must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."[2] Rule 26(a)(2)(C), on the other hand, "addresses the disclosure of expert witnesses who were involved in the events leading up to litigation and may testify both as an expert and as a fact witness."[3] Such disclosures must state "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."[4] Per the advisory committee's notes to the 2010 amendment, the disclosure required by Rule 26(a)(2)(C) "is considerably less extensive than the

---

[1] Rec. Doc. 83, p. 12.
[2] Fed. R. Civ. P. 26(a)(2)(B).
[3] *LaShip, L.L.C. v. Hayward Baker, Inc.*, 680 F. App'x 317, 324 (5th Cir. 2017); *see also Fielden v. CSX Transp., Inc.,* 482 F.3d 866, 871 (6th Cir. 2007) ("[A] report is not required when a treating physician testifies within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from the plaintiff's records up to and including that treatment.").
[4] Fed. R. Civ. P. 26(a)(2)(C).

report required by Rule 26(a)(2)(B)," and "[c]ourts must take care against requiring undue detail," keeping in mind the non-retained nature of these witnesses.[5]

During oral argument, defense counsel conceded that the instant motion raises Rule 26 and scheduling order violations, rather than true *Daubert* issues, although the remedy sought is exclusion of certain expert witness testimony. Indeed, the testimony of treating physicians is not subject to the strict requirements of Federal Rule of Evidence 702 and *Daubert*; those more exacting standards are justified for experts who are "permitted wide latitude to offer opinions, including those that are *not based on firsthand knowledge or observation*."[6] A treating physician, on the other hand, "may testify to his opinions about a plaintiff[']s injuries if his testimony is based on knowledge acquired during the course of his treatment of the plaintiff."[7] "A written report is therefore not required for a treating physician whose testimony and opinions derive from information learned during actual treatment of the patient, rather than from subsequent evaluation as a specially retained expert."[8] The Defendant seems to concede these allowances for treating physicians, as its reply

---

[5] Fed. R. Evid. 702 advisory committee's note (2010).
[6] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993) (citing Fed. R. Evid. 702, 703) (emphasis added); *see also Butler v. Louisiana*, No. 12-cv-420, 2014 WL 7186120, at *2 (M.D. La. Dec. 16, 2014).
[7] *Knorr v. Dillard's Store Servs. Inc.*, No. 04–3208, 2005 WL 2060905, at *3 (E.D. La. Aug.22, 2005).
[8] *Id.*

brief repeatedly asks that these physicians' opinions be limited to their "treatment only."[9]

The Defendant's memorandum in support of the instant motion begins by stating that the Plaintiff was referred by his attorneys to each of these physicians "[a]fter the alleged incident made subject of this litigation[.]"[10] The defense then explains that Drs. Leblanc and Romero are partners in the Lafayette medical clinic, Louisiana Orthopedic Specialists.[11] Yet, the Defendant acknowledges that the Plaintiff was a former patient of Dr. Leblanc, dating back to 2013, a fact which is also memorialized in the patient history section of Dr. Leblanc's May 6, 2015 report, when Dr. Leblanc first saw the Plaintiff for the injury at issue in this case.[12] Dr. Leblanc's report clearly denotes the Plaintiff's chief complaint and medical history, and then proceeds to describe Dr. Leblanc's physical examination, imaging, assessment, plan and procedure.[13] Dr. Leblanc is entitled to testify as to his opinions arising from such treatment.

Dr. Leblanc's partner, Dr. Romero, likewise first evaluated the Plaintiff on May 6, 2015, as memorialized in a "Cervical and Thoracolumbar Spine Initial Evaluation," and later performed spinal injections and surgery.[14] Dr. Romero's

---

[9] Rec. Doc. 83.
[10] Rec. Doc. 63-1, p. 5.
[11] *Id.*
[12] Rec. Doc. 63-1, p. 13; Rec. Doc. 63-4.
[13] Rec. Doc. 63-4.
[14] Rec. Docs. 63-6, 63-7.

August 5, 2016 letter, which the Defendant seeks to exclude, states that his opinion is being rendered on the basis of *his* medical records, discussions with the Plaintiff, and the medical records of the Plaintiff's other treating physicians.[15] Dr. Romero is entitled to testify as to his opinions which resulted from his treatment of, including surgery on, the Plaintiff. Dr. Romero's letter also indicates that he "recommended an evaluation with a psychiatrist."[16]

Accordingly, Dr. Blackburn's evaluation report, dated July 18, 2016, indicates that the Plaintiff was seen for a psychiatric evaluation "as per the recommendation of his orthopedic physician, Dr. Neil Romero."[17] The evaluation's patient history section dates back to March of 2015, the date of the incident at issue, and details the Plaintiff's medical history, including details of the providers and dates, before stating Dr. Blackburn's own impressions of the Plaintiff. Dr. Blackburn is entitled to opine as to his impressions derived directly from his treatment of the Plaintiff.

Likewise, the July 29, 2017 report of the Plaintiff's neurologist, Dr. Weir, indicates that the Plaintiff was first referred to Dr. Weir by Dr. Romero, on June 16, 2015.[18] Dr. Weir details the Plaintiff's medical history, treatment with other providers, and complaints; discusses the studies completed by Dr. Weir; and ultimately includes Dr. Weir's diagnosis and assessment of the Plaintiff's

---

[15] Rec. Doc. 63-7.
[16] *Id*.
[17] Rec. Doc. 83-5, p. 1.
[18] Rec. Doc. 63-12.

impairment of function and disability, to the extent related, in Dr. Weir's opinion, to the Plaintiff's headaches. Beyond the subject of his own treatment of the Plaintiff, Dr. Weir defers to Dr. Romero regarding "disability and permanent functional employment restrictions of his cervical spine and lumbar spine."[19] Dr. Weir is also entitled to testify as to his opinions which resulted directly from his own treatment of the Plaintiff.

The Fifth Circuit has explained that "[t]he basic purpose of Rule 26 is to prevent prejudice and surprise."[20] Here, the Court has reviewed the medical records and reports of these treating physicians and, contrary to the arguments of defense counsel, finds no risk of either prejudice or surprise. Although the record allows for some confusion between the retained versus non-retained nature of these experts, the Court agrees with the Plaintiff that neither the genesis of the doctor-patient relationship nor the compensation agreements herein excludes these doctors from the category of treating physicians exempt from the disclosure requirements of Rule 26(a)(2)(B). It is clear from the record that each of these doctors has treated the Plaintiff; the Defendant has been provided with all relevant medical records and opinions; and, to the extent the Defendant challenges the basis for any part of the physicians' opinions, it will have the opportunity to cross-examine the witnesses. Accordingly, each of these treating physicians may offer opinions directly based on

---

[19] *Id.* at p. 3.
[20] *Joe Hand Promotions, Inc. v. Chios, Inc.*, 544 F. App'x 444, 446 (5th Cir. 2013) (internal quotations and citations omitted).

knowledge acquired during the course of that physician's treatment of the Plaintiff, and the Plaintiff's medical records up to and including that treatment.[21]

As to whether the Plaintiff's treating physicians are qualified to offer opinions on medical causation, this Court agrees with Judge Drell's statement that "medical doctors are qualified – indeed, uniquely qualified – to offer opinions as to medical causation[.]"[22] Such opinions will be weighed accordingly.

The Court notes that this case will be tried to the bench, rather than a jury. Rule 702 requires the trial judge to act as a gatekeeper to ensure that all expert testimony "is not only relevant, but reliable."[23] However, the importance of this gatekeeper role is "significantly diminished" in bench trials, because there is no jury to expose to unreliable or misleading evidence.[24] *Daubert* instructs that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[25]

The instant motion (Rec. Doc. 63) is therefore granted insofar as the testimony and opinions of Doctors Leblanc, Weir, Romero, and Blackburn will be limited to their treatment of the Plaintiff; however, the motion is denied in all other respects,

---

[21] *See Fielden*, *supra*, 482 F.3d at 871.
[22] *Layssard v. United States*, No. 06-cv-0352, 2007 WL 4144936, at *3 (W.D. La. Nov. 20, 2007).
[23] *Daubert*, 509 U.S. at 589.
[24] *See Whitehouse Hotel Ltd. Partnership v. C.I.R.*, 615 F.3d 321, 330 (5th Cir. 2010) (citing *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000)).
[25] 509 U.S. at 596.

to wit, these treating physicians may opine on medical causation to the extent those opinions are derived directly from their treatment of the Plaintiff.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 12th day of July, 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE