UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| VICTOR MICHAEL DAUTERIVE | CIVIL ACTION NO. 15-cv-2182 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| GUILBEAU MARINE LOGISTICS L L C ET AL | BY CONSENT OF THE PARTIES |

## MEMORANDUM ORDER

Before the Court is the Motion to Exclude the Expert Testimony/Opinions of Gregg S. Perkin, P.E. (Rec. Doc. 65), filed by Defendant Guilbeau Marine, Inc. The Plaintiff filed an opposition (Rec. Doc. 84), to which the Defendant replied (Rec. Doc. 86). Oral argument was held on June 28, 2018. For the following reasons, the motion is denied.

## BACKGROUND

This case arises out of an incident which occurred on March 12, 2015, whereby an offshore supply vessel, the M/V Rosite G owned and operated by the Defendant Guilbeau Marine, Inc., made contact with a support leg of a fixed offshore platform, WC-265-B, located on the Outer Continental Shelf in the Gulf of Mexico. Unsurprisingly, the parties dispute the nature and degree of impact between the vessel and platform. At the time of the incident, the Plaintiff, who was the Lead Operator and Person in Charge of the platform, was lying down on a bed, located on

the top deck in the living quarters of WC-265-B. The Plaintiff alleges that he was injured and suffered damages as a result of the incident.

As relevant to the instant motion, the Plaintiff has retained an engineering expert, Gregg S. Perkin, P.E., for the purpose of analyzing the conversion of energy and relative effects thereof as they relate to a simulated version of the above-described contact between the vessel and platform. To that end, Mr. Perkin traveled to and inspected both the relevant vessel (M/V Rosite G) and platform (WC-265-B); reviewed discovery documents relevant to this case; and reviewed the testimony of the Plaintiff (lead operator), Joey Lisenby (A-operator), Sonny Blackard (Defendant's deckhand) and Captain Sanchez (Defendant's master).[1] From there, Mr. Perkin and colleague Sam Herod developed a scaled, structural model using an engineering software program called ANSYS, in order to simulate the impact at issue in this case.[2] Using approximate weight of the vessel and three different speeds (2mph, 4mph and 6mph), the stated intention of the analysis "was to show that the impact, i.e. allision of a 400 L/T M/V ship at slow speed could plausibly cause the Main Deck to deflect."[3]

The Defendant has challenged Mr. Perkin on multiple grounds. First, the Defendant argues that Mr. Perkin is not qualified to render an opinion in this case,

---

[1] Rec. Doc 65-2, pp. 3-21.
[2] *Id*. at pp. 21-41.
[3] *Id*. at p. 40.

*i.e.* one involving a dynamic response of a fixed offshore platform to contact from a moving vessel during unmooring operations, primarily because Mr. Perkin lacks structural engineering expertise. Second, the Defendant argues that Mr. Perkin's methodology was flawed for failure to employ the applicable industry standards and federal regulations, specifically API RP 2A-WSD,[4] in performing a dynamic response analysis ("DRA") of the fixed platform. Third, the Defendant asserts that Mr. Perkin's opinion is not relevant, as it is not based on sufficient facts or data, but rather "worked backward" off of the Plaintiff's version of events in order to conform thereto. The Plaintiff's responses will be discussed in the analysis below.

## LAW AND ANALYSIS

Trial judges, as gatekeepers, are tasked with "ensur[ing] that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[5] Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

---

[4] "API" stands for American Petroleum Institute; "RP" stands for Recommended Practice. "API RP 2A-WSD" refers to the Recommended Practice for Planning, Designing and Constructing Fixed Offshore Platforms-Working Stress Design, Twenty-first Edition, December 2000; [errata and supplements specified]; incorporated and adopted by reference in the Code of Federal Regulations, 30 C.F.R. §§ 250.198(h)(47) (citing other sections therein). *See* Rec. Doc. 65-1, pp. 18-19 n. 56.
[5] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.[6]

Rule 702(a)'s condition that the evidence or testimony should "help the trier of fact to understand the evidence or to determine a fact in issue" goes primarily to relevance.[7] "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."[8] Because this case will be tried to the bench, rather than a jury, the importance of the gatekeeper role is "significantly diminished," as there is no jury to expose to unreliable or misleading evidence.[9]

*Daubert* emphasized that Rule 702's inquiry is "a flexible one," focusing on the expert's "principles and methodology, not on the conclusions that they generate."[10] The Fifth Circuit has confirmed that *Daubert*'s nonexclusive list of factors, intended to guide a trial court's evaluation of scientific evidence, applies in

---

[6] Fed. R. Evid. 702.
[7] *Daubert*, 509 U.S. at 591.
[8] *Id*. (citation omitted).
[9] *See Whitehouse Hotel Ltd. Partnership v. C.I.R.*, 615 F.3d 321, 330 (5th Cir. 2010) (citing *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000)). The Defendant cites *Thompson v. Rowan Companies, Inc.*, No. 06-cv-3218, 2007 WL 724646, (E.D. La. Mar. 6, 2007), as an instance where, even in a bench-tried case, Judge Barbier found a naval architect and marine engineer not qualified to offer certain opinions and therefore limited the expert's testimony. A quick review of that case clearly indicates that the testimony was limited on the basis of the proponent thereof conceding that the expert was not so qualified. In all other respects, Judge Barbier denied the motion, because "the objectives of *Daubert* [were] no longer implicated" in the bench trial.
[10] 509 U.S. at 594–95; *see also Kumho Tire Co. v. Carmicheal*, 526 U.S. 137, 141 (1999).

cases where a court is tasked with evaluating whether an expert in engineering, among other categories, "is a hired gun or a person whose opinion in the courtroom will withstand the same scrutiny that it would among his professional peers."[11] "The nonexclusive list includes 'whether [a theory or technique] can be (and has been) tested,' whether it 'has been subjected to peer review and publication,' the 'known or potential rate of error,' and the 'existence and maintenance of standards controlling the technique's operation,' as well as 'general acceptance.'"[12] "Not every guidepost outlined in *Daubert* will necessarily apply to expert testimony based on engineering principles and practical experience, but the district court's 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue' is no less important."[13]

Thus, "whether an expert's testimony is based on 'scientific, technical or other specialized knowledge,' *Daubert* and Rule 702 demand that the district court evaluate the methods, analysis, and principles relied upon in reaching the opinion."[14] "The court should ensure that the opinion comports with applicable professional

---

[11] *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997).
[12] *Watkins*, 121 F.3d at 989 (quoting *Daubert,* 509 U.S. at 593–594).
[13] *Id*. at 990–91 (quoting *Daubert*, 509 U.S. at 592–93).
[14] *Watkins*, 121 F.3d at 991.

standards outside the courtroom and that it 'will have a reliable basis in the knowledge and experience of [the] discipline.'"[15]

The rejection of expert testimony is the exception rather than the rule.[16] *Daubert* instructs that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[17] Nonetheless, the Plaintiff bears the burden of proof, as the proponent of the expert testimony, to prove that the expert's findings and conclusions are reliable. "This requires some objective, independent validation of the expert's methodology."[18] "The proponent need not prove to the judge that the expert's testimony is correct, but [h]e must prove by a preponderance of the evidence that the testimony is reliable."[19]

*Perkin's Qualifications*

As stated, the Defendant first attacks Mr. Perkin's qualifications, primarily because he is not a registered professional structural engineer or civil engineer specializing in offshore structural design. Instead, Mr. Perkin has been a registered

---

[15] *Id.* (quoting *Daubert*, 509 U.S. at 592); *see also United States v. Valencia,* 600 F.3d 389, 424 (5th Cir. 2010) (court should strive to ensure that the expert, "whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.") (citing *Kumho Tire*, 526 U.S. at 152).
[16] *See* Fed. R. Evid. 702 advisory committee's note (2000).
[17] 509 U.S. at 596.
[18] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).
[19] *Id.*

professional mechanical engineer since 1978 and owns Engineering Partners International, L.L.C., through which he works as a consultant and professional engineer in the field of mechanical engineering.[20] He has been tendered and accepted as an expert in state and federal courts in the field of mechanical engineering and testified that he has twice provided a litigation-related opinion regarding a vessel coming in contact with a fixed platform.[21]

The Plaintiff has cited the Court to three cases in which Mr. Perkin was retained to "conduct impact and/or energy conversion analyses," related to an allision between an offshore jack-up drilling rig and an offshore platform; the extent to which Hurricane Ivan was responsible for the separation of a mast from the base of an offshore SPAR platform; and the extent to which energy from a downhole fishing operation may have caused a well servicing unit to "fall forward and topple over."[22]

---

[20] Rec. Doc. 65-3, p. 4, 13; Rec. Doc. 84, p. 16.
[21] *Id*. at pp. 5, 6, 10.
[22] Rec. Doc. 84, p. 18 (citing Rec. Doc. 84-2, pp. 44-47 (Perkin's affidavit)). The Court notes that any argument that the Court should not consider Mr. Perkin's affidavit in considering the instant motion is moot, given that, during oral argument, the Court specifically and repeatedly asked counsel for both sides whether the Court should refrain from considering objectionable material contained in the record. All counsel agreed that the Court may consider the exhibits attached to the motion and opposition, including Mr. Perkin's affidavit. Nevertheless, the Court has limited its consideration thereof, having decided that same should be considered in its proper context, at trial, with the benefit of cross-examination and presentation of contrary evidence. *See Daubert*, 509 U.S. at 596.

The Plaintiff concedes that in the former two cases, a software called ALGOR was used, rather than ANSYS which was used in this case. Although the Plaintiff asserts that ALGOR is an ANSYS competitor and "substantially similar" thereto,[23] the Defendant responds that the Plaintiff has failed to provide any specifics in support of this "conclusory assertion."[24] Regardless, in the context of Mr. Perkin's report, affidavit, and deposition, the Court does not hesitate to find that the Defendant's objections that Mr. Perkin lacks the requisite experience using ANSYS should go to the weight, rather than the admissibility, of the testimony. The Court notes that, although Mr. Perkin testified that he has never personally – as opposed to other members of his engineering firm – used ANSYS in connection with a DRA of an *entire* fixed platform, he has "used ANSYS for years."[25]

During oral argument, the Defendant relied heavily upon the South Carolina district court case of *Wheeler v. Manitowoc Cranes, Inc.*, C/A No. 2:00-4013-18, 2002 WL 34703748 (D.S.C. Apr. 8, 2002), in support of its challenges to Mr. Perkin's qualifications. In *Wheeler*, a products liability case centered around a lattice boom crane, the court was confronted with a motion in limine to exclude testimony of the plaintiff's only expert witness as to crane design and safety. Recognizing, first,

---

[23] Rec. Doc. 84, p. 18.
[24] Rec. Doc. 86, p. 5.
[25] Rec. Doc. 65-3, p. 12. Again, the parties make distinctions between analysis of an *entire* platform versus analysis of "mechanical equipment and systems utilized in the energy industry," *see* Rec. Doc. 84, pp. 16-17. These objections and/or alleged flaws in Mr. Perkin's opinion go to the weight, not the admissibility, thereof.

that the expert was indeed a professional engineer, the court went on to make the following findings: the expert "admitted in his deposition that he did not have any experience" in the area of "cranes, and specifically lattice boom cranes;" "had not operated a crane;" had never "expressed any opinions in a deposition or trial regarding a crane system;" "had never been a member of or contributor to . . . the body that promulgates the industry standards for crane design;" did not review literature setting forth the applicable standard for crane design and safety; and "never would have had an occasion to examine any crane had it not been for the litigation."[26] And, in the face of that dearth of knowledge or experience, the *Wheeler* plaintiffs failed to offer *any* evidence, other than the fact that the expert was a professional engineer, to support a finding of expertise in crane design and safety.[27] For the reasons explained both above and below, the expert in *Wheeler* sits in stark contrast to Mr. Perkin, insofar as Mr. Perkin's qualifications, knowledge and experience relate and are applicable to the facts of this case.

"Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'"[28] "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a

---

[26] *Wheeler*, 2002 WL 34703748, *2.
[27] *Id*. at *3.
[28] *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Fed. R. Evid. 702).

particular field or on a given subject."²⁹ As the Fifth Circuit has noted, "[a]s long as some reasonable indication of qualifications is adduced . . . qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity."³⁰

In light of Mr. Perkin's education, training, and his knowledge of, and experience in, analyzing similar energy conversion cases, the Plaintiff has established some reasonable indication of Mr. Perkin's qualifications. From here, any alleged flaws in his qualifications will be issues for the Court, as the trier of fact, to weigh during the trial on the merits.

*Perkin's Methodology*

Second, the Defendant argues that Mr. Perkin's methodology was flawed for failure to employ the applicable industry standards and federal regulations, specifically API RP 2A-WSD, in performing a DRA of the fixed platform. Because he failed to consider the methodologies (or "steps") set forth in API RP 2A-WSD, the Defendant objects to Mr. Perkin's flawed assumption, rather than verification, that the platform would respond elastically to the forces, or stresses, used in his DRA.³¹

---

²⁹ *Id.* (citing *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).
³⁰ *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superceded by statute on other grounds as noted in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n. 16 (5th Cir. 2002).
³¹ *See* Rec. Doc. 65-1, pp. 18-25; Rec. Doc. 86, pp. 5-8.

Mr. Perkin testified that he has previously done work for the American Petroleum Institute ("API") and is familiar with API RP 2A-WSD, which has been adopted by the Code of Federal Regulations as the recommended practice for planning, designing and construction of fixed platforms.[32] It is undisputed that WC-265-B meets the API's definition of a fixed platform which has a braced caisson, and further undisputed that Mr. Perkin has never designed, built, or installed a fixed offshore platform during his career.[33] In performing the DRA of the fixed platform in this case, it is undisputed that Mr. Perkin did not consult API RP 2A-WSD, as the Defendant alleges should have been done; however, Mr. Perkin testified that he did not believe that he needed to do so, because the platform was already designed and built, and therefore the standard did not apply.[34]

In response, the Defendant insists that Mr. Perkin's testimony is unreliable and therefore must be excluded because API RP 2A-WSD absolutely applies to platforms such as WC-265-B, yet Mr. Perkin failed to consider the methodologies outlined therein. The Defendant even asks this Court to take judicial notice that the Bureau of Safety and Environmental Enforcement (BSEE) "would have never

---

[32] Rec. Doc. 65-3, pp. 4-5, 6-7. This is in contrast to the *Wheeler* expert, who admitted to having never been a contributing member of the relevant standard-promulgating body for crane design and further admitted to having failed to review literature setting forth the relevant industry standards. Mr. Perkin, on the other hand, readily admitted his familiarity with API and, specifically, API RP 2A-WSD, but testified as to his belief that it does not apply to his analysis herein.
[33] *Id*. at pp. 7-8.
[34] *Id*. at p. 10, 15.

accepted [Mr.] Perkin's analysis/assessment since it did not conform to the methodologies/requirements set forth in API RP 2A."[35] In support of its request, the Defendant shows that this platform was modified in 2012, at which time the required application – which the Defendant notes was submitted after the platform was installed – noted that "[a]ll structural members were *designed* per API RP 2A . . . ."[36] Although the Defendant deems this document the "proverbial 'nail in the coffin,'" the Court is not convinced.

Again, Mr. Perkin testified that he did not believe that he needed to consult API RP 2A-WSD, because the platform was already designed and built, and therefore the standard did not apply.[37] The Plaintiff's briefing, as reinforced during oral argument, clearly indicates that this lawsuit does not involve any allegations that WC-265-B was defectively designed, planned, constructed, or otherwise unfit for its intended purpose.[38] Instead, the Plaintiff's allegations, and Mr. Perkin's analysis, focus on the energy conversion that allegedly resulted from an impact between a moving vessel and a stationary platform. While the Defendant's experts indeed incorporate the API RP 2A-WSD standard into their opinions, the Defendant has failed to show that Mr. Perkin's failure to do so renders his opinion fatally

---

[35] Rec. Doc. 86, p. 7.
[36] *Id*. (citing Rec. Docs. 65-15, 86-1) (emphasis added).
[37] Rec. Doc. 65-3, p. 10, 15.
[38] Rec. Doc. 84, p. 23.

flawed. It is within the Court's discretion to find that conflicting methodologies go to probative weight, rather than admissibility.[39] Here, the Defendant's experts are poised to provide conflicting opinions to that of Mr. Perkin, and this Court is capable of weighing those opinions during trial on the merits.[40] Mr. Perkin's decision not to consider API RP 2A-WSD, however flawed it may (or may not) prove to be, goes to the weight, rather than the admissibility.

*Relevance of Mr. Perkin's Testimony*

Third and finally, the Defendant argues that Mr. Perkin's opinion is not relevant, as it is not based on sufficient facts or data, but rather "worked backward" off of the Plaintiff's version of events in order to conform thereto. The Court noted at the outset of this order that Mr. Perkin's report clearly delineates the investigation undertaken prior to creating the scaled structural model utilized in performing his DRA. It is true that Mr. Perkin also reviewed and considered the deposition testimony of the Plaintiff, as well as the deposition testimony of the other fact witnesses, including those aligned with and/or expected to testify on behalf of the Defendant. Such circumstances are far from unusual in the formation of a retained expert's report and resultant opinion in anticipation of litigation. As explained to the

---

[39] *Tyler v. Union Oil Co. of California*, 304 F.3d 379, 392 (5th Cir. 2002); *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).
[40] *See United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (citing *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

parties during oral argument, the Court is prepared to listen to the fact witnesses in this case, weigh credibility accordingly, and make appropriate findings as to the relevant facts underlying the alleged contact between the vessel and platform at issue in the underlying incident. Should the Court find that any material facts, or portions thereof, underlying Mr. Perkin's report and resultant opinion are incredible, the opinion itself may very well be subject to the same finding. However, these findings simply cannot be made on the basis of the pretrial record; they must be made with the benefit of live testimony, weighed accordingly through considerations of credibility and presentation of contrary evidence.

## **CONCLUSION**

For the foregoing reasons, and having considered the law and the arguments of the parties made both in briefing and during oral argument, the Court finds that the Defendant's objections to Mr. Perkin's testimony are best directed toward the probative weight, rather than the admissibility, thereof. Accordingly, the instant motion (Rec. Doc. 65) is denied.

THUS DONE AND SIGNED this 13th day of July, 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE